IN the MATTER OF JUDICIAL DISCIPLINARY PROCEEDINGS AGAINST the Honorable John (Jack) AULIK, Circuit Judge, Dane County.

Supreme Court

*No. 87–0993–J. Submitted on briefs June 1, 1988.—Decided October 4, 1988.*

(Also reported in 429 N.W.2d 759.)

For the respondent, Honorable John (Jack) Aulik, there were briefs by *Gerald C. Nichol, Paul W. Schwarzenbart* and *Lee, Johnson, KilKelly & Nichol, S.C.,* Madison.

For the Board of Attorneys Professional Responsibility there was a brief by *Elena A. Cappella,* Madison,

*L. William Staudenmaier* and *Cooke & Franke, S.C.,* Milwaukee.

PER CURIAM. *Judicial disciplinary proceeding; judge suspended from office.*

We review, pursuant to sec. 757.91, Stats., the findings of fact, conclusions of law and disciplinary recommendation of the judicial conduct panel in this proceeding. The panel concluded that the Honorable John Aulik, Circuit Judge for Dane county, engaged in judicial misconduct by communicating ex parte with counsel for a party on the merits of a contested matter pending before him and by failing to fully inform counsel for the other party after those ex parte communications had been discovered. As discipline for that misconduct the panel recommended that Judge Aulik be suspended from judicial office for a period of not less than 30 nor more than 90 days. The panel consisted of Court of Appeals' Judges Neal Nettesheim, who served as presiding judge, Burton Scott and Thomas Cane.

Although Judge Aulik disputed the panel's findings concerning the nature of written material he furnished ex parte to counsel and whether he read that counsel's letter responding to the written materials prior to deciding the case before him, it was undisputed that on two occasions, once orally and once in writing, Judge Aulik discussed with the attorney for a party the merits of contested litigation pending in his court. For reasons discussed below, a resolution of the disputed factual issues is not necessary in order to adopt the panel's conclusion that Judge Aulik violated three of the standards set forth in the Code of Judicial Ethics and that those violations were willful. It is likewise unnecessary to resolve those factual

issues to conclude that the gravity of Judge Aulik's misconduct warrants severe discipline.

While a judicial conduct panel is statutorily directed to make a recommendation for discipline once it has concluded that a judge has engaged in judicial misconduct, sec. 757.89, Stats., the supreme court, after reviewing the panel's findings of fact and conclusions of law, determines what constitutes appropriate discipline to impose for that misconduct. Here, Judge Aulik violated the fundamental principles of the court system: fairness and impartiality—fairness to the litigants in presenting their case to the court; impartiality of the judge in the decision-making process. A judge's communications with only one of two adversary parties concerning the merits of pending litigation deprives both parties of a full and fair hearing before the judge. His misconduct merits proportionately serious discipline. On the facts before us, we determine that discipline to be his suspension from judicial office for a period of 90 days.

The judicial misconduct before us is premised on the following facts. When John Aulik took the bench in Dane county circuit court on August 1, 1986, there was pending in that court, among other matters, *Bennin v. Swerig,* a suit demanding payment on two promissory notes. The plaintiff, who at the same time was the proponent of a will in a related probate matter pending in another branch of the same court, was represented by the law firm of Foley and Lardner; Attorney Thomas Ragatz of that firm represented the will proponent in the probate proceeding. The defendant in *Bennin* was represented by the law firm of Clifford and Relles, which also represented that party as objector to the will offered in probate.

The promissory notes at issue in *Bennin* had been given by the defendant to his mother, the decedent whose estate was being probated, and the notes had been discharged in bankruptcy. Because of that discharge, the defendant moved for dismissal of the action and sought a finding that the action was frivolous. The plaintiff did not contest the motion for dismissal but did oppose the frivolous action motion.

When Judge Aulik took office, argument on the frivolous action motion had already been heard by his predecessor and in early August, 1986, all briefs ordered by the court had been filed. Accordingly, the judge was to decide the matter on the basis of the briefs and the transcript of the argument. The hearing transcript was filed sometime during the last two weeks of September and, pursuant to the court's rule establishing the time period for circuit court decisions, SCR 70.36, *Bennin* was to be decided within 90 days of the date of that filing. It appeared, however, that the judge and his staff mistakenly believed that the 90–day period for decision commenced when the last brief was filed and, consequently, that the case was to be decided by an earlier date, November 8, 1986.

After Judge Aulik assigned his law clerk, John Wirth, to research the frivolous action issue, the law clerk told the judge that it appeared *Bennin* was frivolous. Thereafter, in late October or early November, 1986, Judge Aulik met Attorney Ragatz by chance outside the building in which Foley and Lardner had its office. The two knew each other and in the ensuing conversation Judge Aulik said his law clerk had concluded that the Foley and Lardner firm might be involved in a frivolous lawsuit. Attorney Ragatz responded that the action was not frivolous, stating

that his firm had carefully researched the legal theory of the case.

Soon after that conversation, Judge Aulik told his law clerk to give him a written summary of his research in *Bennin*. The judge testified that, without first reading it, he mailed what his clerk gave him to Attorney Ragatz without a cover letter or other explanation. Other evidence characterized the material the judge sent as a "draft decision." The nature of that material is one of the disputed facts before us, but whatever it was, a copy was not sent to opposing counsel.

On November 7, 1986, Judge Aulik executed a certification of pending case status, pursuant to SCR 70.36, extending the time for his decision in *Bennin* 90 days—in the judge's and his staff's understanding, to February 8, 1987. Judge Aulik and his law clerk testified that the extension was needed because the frivolousness issue had not yet been fully researched and the case was not ready for decision. The judge also testified that, until informed by his court clerk shortly before the initial due date, he was not aware of either the decision time set by SCR 70.36 or the availability of an extension under that rule.

In the meantime, on November 4 or 5, 1986, Attorney Ragatz related the conversation he had had with Judge Aulik about the apparently frivolous action to David Reinecke, the associate attorney at Foley and Lardner who had been assigned to work on *Bennin* under the supervision of Attorney Ragatz. A few days later Attorney Ragatz showed Attorney Reinecke the material he had received from Judge Aulik and directed him to prepare a letter response to the judge for Attorney Ragatz to sign.

Attorney Reinecke prepared a letter addressing the frivolousness issue and referring to matters set forth in the brief the firm had filed and gave it to Attorney Ragatz, together with the material the judge had sent. Attorney Ragatz edited the letter, adding a final paragraph, inserting the word "Confidential," and changing the salutation from "Dear Judge Aulik" to "Dear Jack," and he signed the letter "Tom." Discussing the contested issue, the letter stated, among other things, that "[t]here are a few points I believe you have overlooked" and referred to the material received from the judge as "[y]our draft decision." The paragraph Attorney Ragatz added to the letter stated that it was unlikely either side would appeal Judge Aulik's ruling and pointed out that argument in the will contest was scheduled for November 26, 1986 and a ruling in that case from the bench or shortly after argument was possible. Attorney Ragatz wrote that, if successful in the will contest, he believed he could reach a compromise in *Bennin.* He sent that letter to Judge Aulik on November 11, 1986.

During January and February of 1987, counsel engaged in settlement negotiations concerning both the will contest and *Bennin.* When Foley and Lardner increased its settlement efforts during the first week of February, Attorney Clifford went to Judge Aulik's clerk's office on February 5, 1987, to review the file. In it he found the November 11, 1986, letter Attorney Ragatz had sent to the judge. He showed the letter to the court clerk and asked her about it, stating that he had not seen it before and had not been provided a copy. The clerk took the letter to the judge, who was then in the courthouse law library. After briefly looking at it, Judge Aulik told the clerk to tell

Attorney Clifford the letter had no bearing on the case, that a decision in favor of Attorney Clifford's client had already been typed and that the judge would talk to Attorney Clifford if he so desired. The judge kept the letter.

After the clerk gave him that message, Attorney Clifford went to the law library to speak with the judge but found him in another judge's office using the telephone. Judge Aulik testified that he was talking to Attorney Ragatz, whom he had called to find out what the letter was about. In subsequent conversation with Attorney Clifford, Judge Aulik said that he personally had not received the letter or seen it before and that it had had no bearing on his decision, which was in favor of Attorney Clifford's client and would be issued the following day. Attorney Clifford testified that the judge made statements to the effect that he understood the matter was about to be settled and that, because he had not read the letter, he hoped nothing would come of it and did not want to make a big deal of it. He added that if anything was to come of it, that was up to Attorney Clifford. Judge Aulik did not offer to provide Attorney Clifford with a copy of the letter, later testifying that because the letter had been underlined in several parts after it was filed, it was no longer a public document.

After his conversation with Attorney Clifford, Judge Aulik returned to his office and directed his clerk to type the decision in *Bennin* from a draft that had been typed shortly before. That evening, the judge took the Ragatz letter home and wrote a letter to John Wirth, his former law clerk then studying in England, asking him about the letter and the underlining on it. He then went to his former law office and made a copy of the Ragatz letter. The following day, the judge's

letter and the original Ragatz letter were mailed to the law clerk in England. Judge Aulik testified that he sent the original, rather than the copy he had made, because the underlining did not appear on the copy. The original letter ultimately became evidence in this proceeding.

On the following day, February 6, 1987, Judge Aulik told his secretary to telephone the attorneys in *Bennin* and have them appear in his chambers later that morning. At that meeting the judge said he had asked them to meet in order to resolve the matter of the Ragatz letter. Attorney Clifford stated that he was not comfortable discussing the matter without first having a copy of the letter, to which the judge responded, "Well, I don't even have a copy of it ... [pause] ... anymore." Attorney Ragatz said that he had looked in his office for a copy of it but could not find one, adding that Attorney Reinecke would probably be able to find it.

Judge Aulik assured counsel that the letter had had no bearing on his decision, informed them that the decision was favorable to the defendant and then signed copies of the decision and handed them to counsel. Attorney Ragatz then suggested to Attorney Clifford that they settle the case, as the amount of attorney fees and costs remained to be determined. At the end of the meeting, Judge Aulik told Attorney Ragatz to provide Attorney Clifford with a copy of the letter, which he did later that afternoon.

Several of the facts concerning Judge Aulik's conduct in this matter were disputed in the proceeding before the judicial conduct panel. The first concerned the nature of the material the judge sent to Attorney Ragatz. That material was not presented as evidence in this proceeding and its whereabouts are

apparently unknown. Judge Aulik testified that he sent his law clerk's research notes to support the law clerk's statement he had communicated to Attorney Ragatz in their conversation. The law clerk testified that, although he did not remember the specific matter, it was his custom to make handwritten notes and then reduce them to typewritten form, including thereon the caption of the case. He also testified that at the time he gave the judge his notes in *Bennin,* he had not yet reached a conclusion on the frivolousness issue, as he needed to do additional research.

At variance from that testimony was Attorney Reinecke's. He testified that the material from Judge Aulik that Attorney Ragatz gave him for review and preparation of a response was a typed document with the *Bennin* case caption on it and, on the last page, a date line and a line for the judge's signature. Further, he testified, the document contained the conclusion that the action was frivolous and was similar to the written decision Judge Aulik ultimately rendered in the case.

On this disputed issue the panel found that the document Judge Aulik sent to Attorney Ragatz was a draft decision, not the clerk's research notes. The panel based that finding on Attorney Reinecke's testimony, which it considered most reliable because of the attorney's extended contact with the document, and on the repeated reference in Attorney Ragatz's responsive letter to the judge as the author of the document and its denomination as "[the judge's] draft decision."

The second disputed fact before us is whether Judge Aulik read the letter from Attorney Ragatz before it was discovered in the case file. The judge testified that he saw the letter for the first time when

his clerk gave it to him on February 5, 1987, promptly after Attorney Clifford found it in the file. The judge's court clerk testified that it was her usual practice to put what she considered letter briefs directly into the case file and that she did so in this instance. John Wirth testified that the letter was kept in the case file, which remained either in his office at the courthouse, to which Judge Aulik did not have access, or at his residence. Mr. Wirth further testified that he did not discuss that letter specifically with the judge other than to tell him during a discussion of several pending cases that the "later information" had not changed his mind on the frivolousness issue, a statement to which the judge showed no reaction.

The panel's finding that Judge Aulik had read the letter prior to its discovery in the file was based on the following: the letter was marked "confidential" and contained an informal, familiar salutation; notwithstanding the law clerk's testimony that he had done the underlining, the underlining had been done in ink, while the law clerk testified that he customarily did underlining in pencil; Judge Aulik had no reaction when his law clerk told him that the "later materials" he reviewed in *Bennin* did not alter his conclusion that the action was frivolous; the letter suggested the likelihood of a settlement of the case and Judge Aulik did not release the decision until the end of the extended period for decision and not until the chance for settlement had ended with discovery of the letter.

A third disputed fact is the panel's finding that the relationship between Judge Aulik and Attorney Ragatz was based on political and professional contacts. Regarding the former, Attorney Ragatz had contributed $25 to the judge's campaign for office and, while a candidate, Judge Aulik had suggested that his

campaign director contact Attorney Ragatz to arrange a campaign photograph to be taken in the offices of Foley and Lardner, whose view of the State Capitol would appear in the background. Concerning the professional relationship, Judge Aulik's former law firm had consulted with Attorney Ragatz years previously concerning the drafting of a buy-sell agreement, for which consultation Attorney Ragatz was paid $75, but the agreement was never drafted.

On the basis of the facts found, the panel concluded that Judge Aulik engaged in judicial misconduct by willfully and on an aggravated basis violating three of the standards set forth in the Code of Judicial Ethics, SCR 60.01. The statutes define judicial misconduct to include a "wilful violation of a rule of the code of judicial ethics," Sec. 757.81(4)(a), Stats; the Code of Judicial Ethics, Supreme Court Rules chapter 60, deems "an aggravated or persistent failure to comply with the standards of SCR 60.01" a rule violation, SCR 60.17. The three standards the panel found Judge Aulik to have violated are the following:

> SCR 60.01(1) A judge should be mindful that ours is a government of law and not of men and should not permit his or her personal concept of justice to override the law. A judge should administer his or her office with due regard to the integrity of the system of law itself, remembering that he or she is not a repository of arbitrary power but a judge under the sanction of law.
> SCR 60.01(3) A judge should be temperate, attentive, patient, industrious and, above all, impartial. A judge should administer the law free of partiality and the appearance of partiality. To that end he or she should avoid membership in, or association with, an organization whose objectives,

policies or activities are incompatible with the fair and evenhanded administration of justice.

SCR 60.01(10) A judge should always bear in mind the need of scrupulous adherence to the rules of fair play. A judge should not permit private interviews, arguments, briefs or communications designed to influence his or her decision. A judge should not act upon ex parte applications unless the necessity for prompt action is clearly shown, granting relief only when fully satisfied that the law permits it and the emergency requires it.

In the report of its findings, conclusions and recommendation, the panel included a "Decision" section "to assist the Supreme Court in evaluating [the panel's] Findings of Fact, Conclusions of Law and Recommendation."

In this review of the panel's report, Judge Aulik argued that the findings that he sent Attorney Ragatz a draft decision rather than his law clerk's research summary, that he read the letter response of Attorney Ragatz prior to its discovery in the court file and that he had a relationship with Attorney Ragatz based on professional and political dealings were clearly erroneous and should be rejected. Judge Aulik also disputed the panel's finding that during his conversation with Attorney Clifford following discovery of the Ragatz letter he made statements to the effect that he understood the *Bennin* matter was about to be settled, that he hoped nothing would come of the letter, that he did not want to make a big deal of the letter and that if anything did come of the letter, it was up to Attorney Clifford. He also contested the panel's finding that he told the attorneys at the meeting in his chambers that he did not have a copy of that letter anymore. In addition to those specific factual findings,

Judge Aulik contested the statements the panel made in the "Decision" portion of its report that the document Judge Aulik sent Attorney Ragatz was one he prepared or directed to be prepared, that he might have done the underlining on the Ragatz letter and that he delayed deciding the frivolous action motion as a result of the Ragatz letter.

The standard of review we apply to the panel's findings of fact is the clearly erroneous standard, formerly expressed in terms of "against the great weight and clear preponderance of the evidence." *In Matter of Complaint Against Seraphim,* 97 Wis. 2d 485, 509, 294 N.W.2d 485 (1980). Accordingly, we will accept the panel's findings of fact if they are not clearly erroneous.

The panel's contested findings were based on conflicting testimony and, in part, upon inferences drawn from the evidence. While the clearly erroneous standard applies to the facts found directly, it is for us on review to determine whether the facts inferentially found were based on inferences reasonably drawn from credible evidence. Although we might have made contrary findings from conflicting testimony or might have drawn different inferences from the facts, we are unable to conclude that the panel's findings of fact were clearly erroneous or that its inferences were unreasonable.

The panel's finding that Judge Aulik sent Attorney Ragatz a draft decision, not the law clerk's summary of research notes, was based on the testimony of a disinterested witness, one who had seen the material, examined it and drafted a letter responsive to its contents; it was also based on the contents of the responsive letter, including its reference to "[the

judge's] draft decision." The panel inferred the fact that Judge Aulik had seen the Ragatz letter prior to its discovery in the court file from circumstantial evidence: the underlining on the letter appeared to be in ink, rather than in pencil, while the law clerk testified he customarily did underlining on file documents in pencil; the letter was labeled "confidential" and bore a first-name salutation; the judge did not react to the law clerk's statement that "later materials" he reviewed did not alter his conclusion on the issue in the case; the judge did not issue his decision in the case until there was no longer the possibility of settlement suggested in Attorney Ragatz's letter.

Regardless how circumstantial the panel's basis for its inference that Judge Aulik had read the Ragatz letter prior to its discovery may be, the inference is based on credible evidence and, for that, is neither unreasonable nor clearly erroneous. The other facts in dispute, other than minor inaccuracies having no conceivable effect on the panel's conclusions, were based on conflicting testimony which the panel evaluated in terms of its credibility, and we do not find those facts to be clearly erroneous.

We note, however, that by accepting the panel's finding that Judge Aulik knew Attorney Ragatz because of prior contacts, we do not adopt its characterization of those contacts as "political," on the basis of the $25 donation to the judicial campaign and the request to use the office for a campaign photograph, and "professional," on the basis of the one-time consultation Attorney Ragatz provided to the law firm in which the judge had previously practiced. More important and certainly indicative of the extent of the relationship between them is the fact that Judge Aulik, happening upon Attorney Ragatz on the street,

unsolicitedly informed him that his law clerk had tentatively concluded that the firm of which Attorney Ragatz was a member might have commenced an action that was frivolous and, after Attorney Ragatz defended the firm's decision to bring that action, sent him work product from his office addressing the merits of the pending issue.

The judge insisted that his ex parte communications with Attorney Ragatz had no bearing on his decision on the frivolous action motion, pointing to the fact that his decision was adverse to Attorney Ragatz's law firm. The panel noted that it was never contended that the purpose of Judge Aulik's ex parte communications was ultimately to rule in Foley and Lardner's favor on the merits of the pending issue, adding, "The evidence does demonstrate, however, that Judge Aulik was at least reluctant to make a finding of frivolousness against Foley and Lardner and that the judge delayed the decision-making process to afford the Foley firm a further opportunity to settle the *Bennin* case, knowing that only the Foley firm was privy to his tentative decision in the case." In light of the fact that the judge released his decision in *Bennin* only after first having obtained a 90–day extension to do so and then just two days before that extension was to expire and having found that the judge had read Attorney Ragatz's letter expressing the expectation of settlement following resolution of the will contest, the panel concluded "that the timing of the actual release of the final decision in *Bennin* was influenced by the letter's statement of eventual settlement."

Judge Aulik strongly opposed that conclusion. He argued that there was not, nor could there have been, a finding that he obtained the 90–day extension to decide *Bennin* after reading Attorney Ragatz's letter,

for he signed the certificate effectuating the extension four days before the Ragatz letter was received in his office. Nonetheless, the panel pointed out, the extension was obtained shortly after the judge's conversation with Attorney Ragatz and after he had sent him material apparently inviting additional argument on the merits.

The panel also noted that, from Attorney Ragatz's defensive reaction to the judge's statement regarding his law clerk's opinion that the action was frivolous, the judge knew that the matter was not insignificant to Attorney Ragatz. In addition, Attorney Clifford testified that in his conversation with the judge following discovery of the letter, Judge Aulik said he thought the case was going to settle. Moreover, there was uncontradicted testimony that sometime in January, 1987, a month or less prior to the discovery of the Ragatz letter in the court file and the release of his decision in the case, Judge Aulik had asked an attorney from the Clifford law firm appearing before him in an unrelated matter and who had nothing to do with *Bennin* whether the will contest to which *Bennin* was related had settled. Those facts, together with the fact that Attorney Ragatz's law firm increased efforts to settle the frivolous action matter at the end of January and early February of 1987, led the panel to conclude that Judge Aulik expected the case to be settled and believed he would not have to hold the action frivolous.

Notwithstanding that conclusion, the panel considered the judge's motivation for the ex parte communications and his conduct subsequent to their discovery immaterial to the issue of whether he engaged in judicial misconduct. Thus, even accepting Judge Aulik's claims that he did not intend to give one party an

advantage in the pending case and that the ex parte communications did not affect its outcome, the panel concluded that his conduct "appeared to compromise the integrity of the decision-making process" and "did serve to give the Foley firm an advantage over the Clifford firm." The panel said:

> Apart from Judge Aulik's intent or motive, his actions struck directly at the decision-making process and the public confidence in that process. In terms of behavior relating to a judge's official capacity, no rule is perhaps more fundamental or necessary than that forbidding *ex parte* communications concerning substantive issues pending before a court. In addition, the effect of Judge Aulik's actions throughout the *Bennin* case was one which resulted in the uneven treatment of one party over the other.

We agree.

■

Judge Aulik compromised the integrity of the court system, acted with partiality in a matter pending before him and violated the elemental rule of fair play by engaging in, indeed, by initiating private communications with counsel representing one side concerning the merits of a contested issue. His doing so effectively gave an advantage, as well as an incentive, to Attorney Ragatz's law firm in settling the dispute. Alerted that the judge's decision on the frivolous action motion was likely to be adverse, Foley and Lardner found itself in a superior position in settlement negotiations. But for Attorney Clifford's fortuitous discovery of the letter in the court file, there might have been a settlement of the dispute, a settlement that would have been tainted by the

advantage Judge Aulik's conduct had provided to one of the parties.

Our acceptance of the panel's findings of fact rather than the facts Judge Aulik proffers does not affect either our conclusion in respect of the judge's judicial misconduct or our determination of the appropriate disciplinary sanction to impose. That Judge Aulik sent an attorney representing a party in contested litigation a draft decision rather than a copy of his law clerk's research summary and that the judge read the attorney's responsive letter prior to deciding the contested issue do not aggravate the already extremely serious nature of the judge's misconduct. That seriousness does not derive from the use to which the ex parte information might have been put by one of the contesting parties; indeed, there is no evidence that Attorney Ragatz or his law firm used that information to its advantage in settlement efforts. Rather, the gravity of Judge Aulik's conduct lies in the potential for harm it occasioned and in the harm it actually caused to the court system.

By twice initiating ex parte communication with counsel for one side in contested litigation, first by casual conversation and then by written disclosure of his office's work product on the contested issue itself, Judge Aulik violated one of the fundamental principles upon which our judicial system is based: the fair treatment of those seeking to resolve their disputes by recourse to our courts. Those ex parte communications subverted the very process Judge Aulik was sworn to administer. When he took office as circuit judge less than four months prior to his conduct in this matter, Judge Aulik swore an oath, saying, in part, "I ... do solemnly swear that I will ... administer justice without respect to persons and will faithfully

and impartially discharge the duties of [the office] to the best of my ability. So help me God." Sec. 757.02, Stats. Judge Aulik violated that oath.

We reject Judge Aulik's claim that his conduct was not "aggravated or persistent," as those terms are used in SCR 60.17. He argued that his actions were "an isolated occurrence of negligent conduct," "impulsive acts of a hard-working, enthusiastic but still inexperienced judge who had not quite made the transition from private practice only a few months earlier." Before taking judicial office, Judge Aulik practiced law for more than 25 years in and out of the courts of this state. As a lawyer he had been bound by a similar proscription against ex parte communications,[1] a proscription we have had occasion to bring to the attention of both lawyers and judges. *In re Marriage of Gould v. Gould,* 116 Wis. 2d 493, 505–06 n. 5, 342 N.W.2d 426 (1984). The rule against ex parte communications applicable to a lawyer is no less applicable to a lawyer who becomes a judge.

---

[1]Beginning in 1970 and until its revision in 1988, Wisconsin lawyers were bound by the Code of Professional Responsibility, SCR chapter 20, one provision of which was:

> In an adversary proceeding, a lawyer may not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except:
> (a) In the course of official proceedings in the cause.
> (b) In writing if the lawyer promptly delivers a copy of the writing to opposing counsel or to the adverse party if the party is not represented by a lawyer.
> (c) Orally upon adequate notice to opposing counsel or to the adverse party if the party is not represented by a lawyer.
> (d) As otherwise authorized by law. SCR 20.44(2).

That prohibition continues in current SCR 20:3.5.

We note, however, that the prohibition of ex parte communications is not absolute; there are circumstances which justify it.[2] Exigent circumstances may permit a judge to communicate and act ex parte. Thus, judges often issue temporary restraining orders on the basis of facts presented by only one side in a contested matter, but only when the need for immediate action supersedes the right of the opposing party to be heard in the matter. No such circumstances were present in the matter before us.

In addition to Judge Aulik's ex parte communications themselves, we consider the fact that during the months following his communications to Attorney Ragatz, at no time did he attempt to rectify his wrongdoing, even though all the while he expected the parties to settle the matter and make a decision adverse to Foley and Lardner unnecessary. There is no question that the judge knew his ex parte communications were wrong; he testified that at the time he sent the material to Attorney Ragatz, he knew it was wrong. Yet, by doing nothing in the months that followed, he allowed that wrongdoing to affect the course of the litigation. Even when confronted by Attorney Clifford moments after the Ragatz letter was discovered, he refused to make full disclosure of what theretofore had been ex parte.

We find unpersuasive Judge Aulik's argument that he would not have given Attorney Clifford a copy of the letter because it had become work product by virtue of the underlining of two sentences in it after it became part of the court file. The judge told Attorney

---

[2]SCR 60.01(10) provides, in pertinent part, "A judge should not act upon ex parte applications unless the necessity for prompt action is clearly shown, granting relief only when fully satisfied that the law permits it and that the emergency requires it."

Clifford that he had already decided the matter and the decision would be issued the following day. With the case already decided, the "work product" nature of the letter, based on underlinings which were, at best, ambiguous, would hardly have mattered. Moreover, on the day following the letter's discovery, the judge did not give Attorney Clifford a copy of the letter; instead, even though Attorney Ragatz said he had been unable to locate a copy and the judge himself had a copy, one which he testified did not show the underlining, he directed Attorney Ragatz to provide him a copy. Judge Aulik's "work product" argument is inconsistent with his having sent other work product—either a draft decision or, as he testified, his law clerk's research notes—to Attorney Ragatz.

Having determined that Judge Aulik engaged in misconduct as the panel had concluded, we now consider the discipline to impose for that misconduct. The Wisconsin Constitution provides four disciplinary alternatives for judicial misconduct: reprimand, censure, suspension and removal. Art. VII, Sec. 11. Of those four alternatives, it is clear that a suspension from office is warranted. It is equally clear that the serious nature of the judicial misconduct before us calls for a suspension for a significant period.

Discipline imposed for judicial misconduct is to be responsive to the gravity of the misconduct—the actual harm or threat of harm it posed to those using our court system and to the system itself. Discipline is not intended to punish the judge; it serves to protect our court system and those having recourse to it from further, similar abuses. However, we are aware of the inevitable, unintended financial repercussions of a suspension from office, regardless of its length, as Judge Aulik will not receive his judicial salary for the

period he is suspended. Yet, we do not, nor should we, measure discipline by dollars. Monetary loss is no more a means of judicial discipline than would be any other punishment of the offending judge, but when a judge is suspended from office, it is an unavoidable consequence.

We determine that a suspension of Judge Aulik from the office of circuit judge for a period of 90 days is appropriate discipline for his misconduct in this matter. Judge Aulik treated two contesting parties before him unfairly, thereby giving one a significant advantage and allowing the other to pursue settlement at a disadvantage. He thus gave cause to question his ability and willingness to impartially adjudicate matters coming before him and to administer the rules of our court system fairly. That the public's confidence in our court system has eroded somewhat as a result of his misconduct seems certain.

Inevitably, members of the public will, from time to time, disagree with decisions of our courts, but that disagreement should never rest upon lack of confidence in the court's integrity. Public confidence in the integrity of the judicial system is essential. It is our responsibility, and the responsibility of every judge, to merit and maintain that confidence. The suspension we impose is a measure of the seriousness of Judge Aulik's actions and is designed to foster confidence in the integrity the public has every right to expect and demand of its judicial system.

In its report, the panel acknowledged the character testimony presented in support of Judge Aulik. Several judges serving on the Dane county circuit court, the local court administrator and three lawyers who either had professional contact with the judge when he was a practicing attorney or had appeared

before him in his court testified that Judge Aulik is truthful, hard-working, diligent and highly regarded as a lawyer and a judge. We are confident that Judge Aulik can and will perform creditable service as a member of our judiciary after the term of suspension has expired.

It is ordered that John Aulik is suspended from the office of circuit judge without compensation and prohibited from exercising any of the powers or duties of a circuit judge in Wisconsin for a period of 90 days, commencing November 7, 1988.