IN the MATTER OF JUDICIAL DISCIPLINARY PROCEEDINGS AGAINST the Honorable Robert CRAWFORD, Milwaukee County Circuit Court Judge.

WISCONSIN JUDICIAL COMMISSION, Complainant,

v.

The Honorable Robert CRAWFORD, Respondent.

Supreme Court

*No. 00–0640–J. Oral argument April 6, 2001.—Decided July 9, 2001.*

2001 WI 96

(Also reported in 629 N.W.2d 1.)

For the complainant there was a brief by *Thomas J. Basting* and *Brennan, Steil, Basting & MacDougall, S.C.*, Janesville, and *James C. Alexander, Wisconsin Judicial Commission*, and oral argument by *Thomas J. Basting*.

For the respondent there were briefs by *Thomas J. Crawford, Mark E. Hersh* and *Mark Hersh Law Office, S.C.*, Milwaukee, and oral argument by *Thomas J. Crawford*.

¶ 1. PER CURIAM. We emphasize at the outset what this case is *not* about: it is not about a judge's right to comment publicly on or criticize the administration of the courts, the justice system or the district attorney's office. Judge Robert Crawford did not forfeit his right to speak freely and petition about such matters when he took the bench, nor does any judge. However, the conduct at issue in this case went beyond mere criticism of the administration of the justice system, and descended into threats and attempted coercion, undertaken with the purpose of overcoming another judge's legitimate, reasoned judgment on an administrative issue.

¶ 2. This case is about Judge Crawford's attempts to intimidate another judge. Judge Crawford made numerous allegations against Milwaukee County's chief judge, the chief judge's daughter (an attorney in the Milwaukee County District Attorney's office) and the district court administrator, suggesting

376

that they had engaged in "influence peddling" and other misconduct in office. He threatened to "go public" with his allegations unless the chief judge dropped his attempts to regulate Judge Crawford's court hours.

¶ 3. In other words, Judge Crawford tried to coerce the chief judge to change an administrative order by threatening to publicly accuse the chief judge, a member of his family, and his top administrator of professional misconduct. That is, Judge Crawford tried to force the chief judge's hand, by threatening public disclosure of extraneous, unfounded, but nevertheless potentially embarrassing professional and personal matters.

¶ 4. Judge Crawford's attempt to intimidate a judge in the performance of his official duties is a direct assault on the independence and integrity of the judiciary. Supreme Court Rule 60.03(2) states a principle of judicial independence. It provides that "[a] judge may not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment." Judge Crawford attempted to induce Chief Judge Michael Skwierawski to violate this provision of the Code of Judicial Conduct. This case, therefore, goes to the heart of judicial independence.

¶ 5. We conclude,[1] as did the panel, that Judge Crawford's attempt to intimidate another judge vio-

---

[1] We review, pursuant to Wis. Stat. § 757.91 (1999–2000), the judicial conduct panel's findings of fact, conclusions of law and recommendation for discipline.

Section 757.91 provides: Supreme court; disposition

The supreme court shall review the findings of fact, conclusions of law and recommendations under s. 757.89 and determine appropriate discipline in cases of misconduct and appropriate action in cases of permanent disability. The rules of the supreme court applicable to civil cases in the supreme court govern the review proceedings under this section.

lated SCR 60.03(1), which provides that "[a] judge shall respect and comply with the law [including the Code of Judicial Conduct] and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." By attempting to intimidate a fellow judge to decide a disputed matter on the basis of family and political considerations rather than the merits, Judge Crawford acted in a manner that undermined rather than promoted public confidence in the integrity and impartiality of the judiciary.[2]

¶ 6. The panel recommended that Judge Crawford be suspended from judicial office for one year.[3] We

---

All subsequent statutory references to the Wisconsin statutes are to the (1999–2000) edition.

[2] SCR 60.03(1) states:

(1) A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

The panel also found that Judge Crawford violated SCR 60.04(2)(a) requiring a judge to discharge administrative responsibilities without bias or prejudice and encouraging cooperation with other judges and court officials in the administration of court business.

SCR 60.04(2)(a) states:

(2) In the performance of the duties under this section, the following apply to administrative responsibilities:

(a) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

Wisconsin Stat. § 757.81(4)(a) provides:

(4) "Misconduct" includes any of the following:

(a) Wilful violation of a rule of the code of judicial ethics.

[3] The panel also concluded that Judge Crawford's conduct violated Wis. Stat. § 943.30(1) and (4).

conclude that a 75-day suspension of Judge Crawford from the bench is appropriate.

I

¶ 7. On March 6, 2000, the Judicial Commission (Commission) filed a complaint with this court alleging that Judge Crawford had violated the Code of Judicial Ethics. Judge Harry G. Snyder, Judge Richard S. Brown, and Judge Daniel P. Anderson, all of District II of the Court of Appeals, were appointed to serve as members of the judicial conduct panel to hear the Commission's allegations against Judge Crawford. On September 18–21, 2000, the panel conducted an evidentiary hearing in this matter at which both the Judicial Commission and Judge Crawford appeared with counsel.

¶ 8. Judge Crawford does not dispute that the events recited below occurred. Further, he does not dispute that the various oral and written statements attributed to him were, in fact, made by him.

¶ 9. Although his written and oral arguments before this court were imprecise on the subject,[4] it

---

Wisconsin Stat. § 943.30(1) and (4) provides:

(1) Whoever, either verbally or by any written or printed communication, maliciously threatens to accuse or accuses another of any crime or offense, or threatens or commits any injury to the person, property, business, profession, calling or trade, or the profits and income of any business, profession, calling or trade of another, with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against the person's will or omit to do any lawful act, is guilty of a Class D felony.

(4) Whoever violates sub. (1) by attempting to influence the official action of any public officer is guilty of a Class D felony.

[4] Notwithstanding general concessions on his part that, for example, "the factual basis may be mistaken" for the petition he

appears that Judge Crawford's specific dispute with the facts of this matter is reflected in the assertion that Chief Judge Skwierawski "did not provide neutral leadership while enforcing his stop-work order," and that his allegations regarding the chief judge's daughter, Assistant District Attorney Audrey Skwierawski, had a factual foundation. The panel concluded that these allegations against Chief Judge Skwierawski and Audrey Skwierawski were unfounded, and, as factual findings, its conclusions are entitled to deference. In any event, however, our disposition of this matter does not depend on the factual basis for Judge Crawford's allegations about Assistant District Attorney Skwierawski or Chief Judge Skwierawski. That Judge Crawford used these personal and professional misconduct allegations in an effort to gain leverage over the chief judge in an effort to pressure him to change an administrative order is the material point.

¶ 10. We need not review or adopt every finding of fact of the panel since we base our decision solely on the following facts as drawn from those findings and as supported by the record.[5]

¶ 11. Shortly after Judge Crawford took the bench in August 1996, he began to regularly remain on the bench into the lunch hour and after regular busi-

---

filed with this court, he also asserts that "his beliefs were substantially correct" and "he continues to believe the gist of the petition is true."

[5] The standard of review to be applied to the panel's findings of fact by this court is the clearly erroneous standard, formerly expressed in terms of "against the great weight and clear preponderance of the evidence." *See In the Matter of Judicial Disciplinary Proceedings Against Aulik*, 146 Wis. 2d 57, 69, 429 N.W.2d 759 (1988); *In the Matter of the Complaint Against Seraphim*, 97 Wis. 2d 485, 509, 294 N.W.2d 485 (1980).

ness hours. He had several discussions in 1997 with then Chief Judge Patrick Sheedy regarding the impact of these hours on Judge Crawford's staff. This situation resulted in the issuance of a July 2, 1997, administrative order ("the Sheedy order") which directed Judge Crawford to give the staff various breaks during the day and to consult with Chief Judge Sheedy before proceeding with extended hours. Judge Crawford was warned that the directives in the order were mandatory and his failure to follow them would result in sanctions. He did not question the authority of Chief Judge Sheedy to issue the order nor did he seek review of it by this court. The Sheedy order was issued under the authority given to a chief judge by SCR 70.20 and SCR 70.19(1), (3)(c), and (3)(f) and 70.20.[6]

¶ 12. A March 23, 1998, memorandum from Chief Judge Sheedy to Judge Crawford reiterated the

---

[6] SCR 70.19(1), (3)(c) and (3)(f) provides:

(1) The chief judge is the administrative chief of the judicial administrative district. The chief judge is responsible for the administration of judicial business in circuit courts within the district, including its personnel and fiscal management. The general responsibility of the chief judge is to supervise and direct the administration of the district, including the judicial business of elected, appointed and assigned circuit judges.

(3) In the exercise of his or her general responsibility, the chief judge has the following duties:

(c) Where necessary, establishment of days and hours for court operation.

(f) Establishment of policies and plans.

SCR 70.20 provides: Authority of the chief judge

The chief judge shall exercise within the judicial administrative district the full administrative power of the judicial branch of government subject to the administrative control of the supreme court. The chief judge may order that his or her directives, policies and rules be carried out. Failure to comply with an order of the chief judge may be grounds for discipline under sections 757.81 to 757.99 of the statutes.

limitations on his court schedule, absent prior approval from Chief Judge Sheedy. Once again Judge Crawford did not seek review of this restriction.

¶ 13. Chief Judge Sheedy was succeeded as chief judge by Judge Michael Skwierawski in August 1998. Receiving information suggesting that Judge Crawford was violating the Sheedy order, Chief Judge Skwierawski, with the assistance of District Court Administrator Bruce Harvey, examined the status of Judge Crawford's compliance. The information received, primarily from Judge Crawford's staff, was that he was continuing to deprive his staff of required breaks and was conducting court beyond the specified hours.

¶ 14. As a result, Chief Judge Skwierawski requested that Judge Crawford meet with him on November 20, 1998. Mr. Harvey and another circuit judge also attended the meeting during which Chief Judge Skwierawski confronted Judge Crawford with the information concerning his alleged noncompliance with the Sheedy order.[7] Judge Crawford denied violating the order and accused Chief Judge Skwierawski of pressing this matter only because Judge Crawford had been previously critical of Assistant District Attorney Audrey Skwierawski, Chief Judge Skwierawski's daughter, and the district attorney's office in general. Judge Crawford further accused Chief Judge Skwierawski of "influence peddling." He stated he would "go public" with his criticisms of Audrey Skwierawski if Chief Judge Skwierawski did not drop the criticism of his hours.

---

[7] The panel further found that Judge Crawford had continued to violate the Sheedy order, requiring the actions taken by Judge Skwierawski, and that Judge Crawford's various allegations against the other individuals were without factual foundation.

¶ 15. Judge Crawford's allegations about Audrey Skwierawski arose out of circumstances beginning with her assignment to Judge Crawford's court for a few months in 1996, after which she asked to be reassigned because of what she considered the adverse working conditions in that court.

¶ 16. In May 1998 Audrey Skwierawski prepared a criminal complaint as a "negotiated issuance," alleging a misdemeanor fourth-degree sexual assault against a defendant who had already agreed to plead guilty to the charge as part of a plea bargain. The case was assigned to Judge Crawford's court and scheduled for a guilty plea proceeding.

¶ 17. The complaint recited the 14-year old female victim's account of the incident, in which she alleged that the defendant held a gun to her neck, threatened to kill her, and forced her to have non-consensual sexual intercourse. The complaint also recounted the statement of the 17-year old defendant, in which he admitted the sexual intercourse, but said it was consensual and not the result of any threats, nor at gunpoint, and that the victim was retaliating against him because he had ended their relationship. One of the investigating officers uncovered material inconsistencies in the victim's version of the incident and concluded that she had either lied about or substantially exaggerated what had occurred. Nevertheless, because the victim was underage, and consent was therefore not a defense, the case was charged, but as a "negotiated issuance" misdemeanor instead of a felony.

¶ 18. Audrey Skwierawski did not handle the plea in front of Judge Crawford on July 22, 1998, because it was reassigned to the regular assistant district attorney handling matters in his court at the time. During the plea colloquy, Judge Crawford questioned

whether the case had been appropriately charged, although he eventually accepted the plea.

¶ 19. Two months later, in September of 1998, Judge Crawford sent a memorandum to Milwaukee County District Attorney E. Michael McCann claiming that Audrey Skwierawski had filed a criminal complaint that "she knew was materially false."

¶ 20. Chief Judge Skwierawski reissued Chief Judge Sheedy's hours-of-operation order for Judge Crawford's court on November 24, 1998, ("the Skwierawski order"). In general, Judge Crawford was again required to adhere to the designated scheduling and not to deviate without permission from Chief Judge Skwierawski or Mr. Harvey.

¶ 21. On January 11, 1999, Judge Crawford sent a memorandum to Chief Judge Skwierawski in which he threatened to petition this court if Judge Skwierawski did not vacate his work hours order within three days. Judge Crawford also sought the removal of District Court Administrator Harvey, who is married to a Milwaukee County assistant district attorney, complaining that he was "misusing his administrative position by entertaining complaints from the district attorney's office on my rulings." Judge Crawford also asserted that on several prior occasions, both in public and in private, Mr. Harvey had criticized his sentencing practices.

¶ 22. Judge Crawford and Chief Judge Skwierawski met on January 14, 1999, with two other circuit judges present. Judge Crawford denied violating either the Sheedy or the Skwierawski orders and claimed that Chief Judge Skwierawski was merely retaliating against him because of his prior criticism of Audrey Skwierawski and the district attorney's office.

¶ 23. At this meeting, Judge Crawford also claimed that in March 1997 he received an anonymous letter, which he had since destroyed, stating that he would be a "one-term judge" and that he was "cuckoo." Judge Crawford told Chief Judge Skwierawski that he believed, based on the handwriting and other factors, that Audrey Skwierawski had sent him the letter.

¶ 24. Once again Judge Crawford told Chief Judge Skwierawski that if he did not withdraw his work hours order, he would "go public" concerning "influence peddling" by Chief Judge Skwierawski and Mr. Harvey, and about Audrey Skwierawski's conduct in his court, including her drafting of what he considered to be a false criminal complaint and her alleged sending of the anonymous letter. Judge Crawford was agitated at this meeting and his tone and demeanor were threatening. Chief Judge Skwierawski informed Judge Crawford that he would not vacate either his order or the Sheedy order.

¶ 25. Later that day Judge Crawford sent an e-mail to all circuit judges in Milwaukee County, recounting the meeting with Chief Judge Skwierawski and again threatening to "go public" with allegations of "insider lobbying and influence peddling," as well as what he perceived to be irregularities in Milwaukee judges' work hours.

¶ 26. On January 28, 1999, Judge Crawford filed a "Petition for Review of Administration in First Judicial District" with this court, asking it to vacate the Skwierawski order, remove Chief Judge Skwierawski as chief judge, and fire Mr. Harvey as district court administrator. The petition repeated the allegations against these two, as well as Audrey Skwierawski and the district attorney's office. Ultimately the Judicial Commission took up the matter and filed a complaint

against Judge Crawford with this court. The matter was referred to the chief judge of the court of appeals for the selection of a judicial conduct panel.

¶ 27. The panel concluded as a matter of law that Judge Crawford wilfully violated SCR 60.03(1) by making numerous unfounded allegations against other members of the justice system, and that this did not promote public confidence in the integrity and impartiality of the judiciary. It also concluded that Judge Crawford wilfully violated SCR 60.04(2)(a) and Wis. Stat. § 943.30(1) and (4) by his conduct during the January 14, 1999, meeting with Chief Judge Skwierawski and his subsequent filing of the petition before this court. In this regard, the panel concluded that Judge Crawford's conduct demonstrated that he had failed to maintain professional competence in matters of judicial and administration and failed to cooperate with Chief Judge Skwierawski and other court officials in the administration of court business.

## II

¶ 28. Judge Crawford was charged with violating SCR 60.03(1) requiring a judge to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. The panel concluded that he had violated this standard.[8]

¶ 29. The Comments to the rule assist in applying the standard to actual conduct. The Comments

---

[8] This court determines whether the facts found by the panel constitute a violation of this provision independently of the panel. *See* Wis. Stat. § 757.91 (rules applicable to civil cases govern the review); *Schreiber v. Physicians Ins. Co. of Wis.*, 223 Wis. 2d 417, 426, 588 N.W.2d 26 (1999) (application of facts to pertinent law is question of law which supreme court reviews independently of lower courts' determinations).

recognize that the standard might be violated in a variety of ways and that it is not practical to list every conceivable prohibited act in the Code itself. Improprieties under the rule include violations of law, court rules or other specific provisions of the Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired. The Comment reads in full as follows:

> Public confidence in the judiciary is eroded by irresponsible or improper conduct of judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
>
> The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all prohibited acts, the proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the chapter. Actual improprieties under this standard include violations of law, court rules or other specific provisions of this chapter. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.

¶ 30. As we explained previously, the events that led to this proceeding started with a dispute between Judge Crawford and two successive chief judges over

the hours of his court. Judge Crawford had a right to disagree with the restrictions placed upon him, to express his disagreement publicly and to petition this court for redress.

¶ 31. But Judge Crawford was not entitled to threaten Chief Judge Skwierawski in an effort to compel him to change his administrative decision. In this case, the threat to Chief Judge Skwierawski involved members of the chief judge's family and the district court administrator. In the meetings with Chief Judge Skwierawski on November 20, 1998, and January 14, 1999, and the January 11, 1999, memorandum, as well as in the January 14, 1999, e-mail, Judge Crawford attempted to force Chief Judge Skwierawski to change his administrative order by threatening to "go public" with his "influence peddling" and misconduct allegations. Chief Judge Skwierawski—and Chief Judge Sheedy before him—was acting within the scope of his duties as chief judge in issuing and enforcing the administrative order. Whatever the validity of his disagreement with those actions, Judge Crawford improperly pressured the chief judge to alter the situation by use of threats instead of reason.

¶ 32. Judge Crawford's threats against the chief judge were, in effect, attempts to induce him to violate SCR 60.03(2). Judge Crawford was pressuring the chief judge to decide the administrative dispute on the basis of family relationships and political considerations rather than the merits, conduct which, if committed, would itself violate the Code. Supreme Court Rule 60.03(2) specifically provides: "[a] judge may not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment."

388

¶ 33. Judges are obligated to "comply with the law." SCR 60.03(1). This includes court rules such as the Code. SCR 60.01(10).[9]

¶ 34. Judge Crawford was plainly attempting to improperly compromise Chief Judge Skwierawski's judgment in the ongoing dispute over court hours by appealing to his relationship with his daughter, his top administrator and others in the court system. Had Chief Judge Skwierawski altered his administrative order in capitulation to Judge Crawford's threats, Judge Crawford would have succeeded in coercing another judge to violate the Code.

¶ 35. Judges are sworn to exercise independent judgment and to decide cases and administrative matters on the merits, without regard to improper extraneous influences or outside pressures, such as family, social, political or other relationships. Judge Crawford threatened the chief judge in an attempt to overcome his otherwise legitimate, reasoned judgment on an administrative issue. This conduct undermines public confidence in the integrity and impartiality of the judiciary in general[10] and in Judge Crawford's integrity and impartiality in particular. A judge who attempts to manipulate administrative decisions by threats of a retaliatory and personal nature demon-

---

[9] SCR 60.01(10) provides:

In this chapter:
(10) "Law" means court rules, statutes, constitutional provisions and legal conclusions in published court decisions.

[10] *See generally In re Kelly*, 238 So. 2d 565, 570 (Fla. 1970):

[C]riticism taken by methods which prevent honest discussion and a fair rebuttal can be expected only to have a destructive result. . .[I]f the methods used raise suspicion of motives among the judges, and renders the courts all suspect to the public, the result can only be an increase in disrespect for law and order. . . .

strates an attitude about the boundaries of legitimate judicial decision-making that is inconsistent with the integrity and independence of the judiciary. Judge Crawford's conduct in this regard violated of SCR 60.03(1).[11]

¶ 36. There can be no dispute that Judge Crawford's conduct .was wilful. Indeed, he does not assert that it was anything other than freely made, and does not claim that it was the product of duress or coer-

---

[11] Judge Crawford has challenged the panel's conclusion that his conduct violated SCR 60.04(2)(a) and Wis. Stat. § 943.30(1) and (4) although he has not been criminally charged with this offense. With respect to the latter, it was the panel's opinion that once Judge Crawford threatened to "go public" with his allegations, he violated this statute because he was threatening injury to the "profession, trade or calling" of Judge Skwierawski, a public official, "with intent to compel" him to vacate his earlier order against his will. Crawford has argued that this statute is overbroad as it criminalizes the dissemination of information which is merely fair comment on the administration of justice.

We do not need to reach the issue concerning the application of SCR 60.04(2)(a) and Wis. Stat. § 943.30(1) to Judge Crawford's conduct. As a general rule, when resolution of one issue disposes of a matter, we will not address additional issues. *See, e.g., Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 863 (1998). We have concluded that Judge Crawford violated SCR 60.03(1), and impose a sanction on that basis alone.

We also reach no conclusion as to whether Judge Crawford maintained improper court hours to begin with and whether he violated the Sheedy and Skwierawski orders. The sanction which we impose in this case does not reflect any determination with respect to this matter. We do, however, caution Judge Crawford that after his suspension is completed he must follow these, and any similar, orders of the chief judge unless directed otherwise by this court.

cion.[12] Further, no judge could have reasonably concluded that it was proper to attempt to influence the actions of a chief judge by means of threats.

¶ 37. We do not seek by this decision to stifle criticism by judges regarding matters of concern to the administration of justice and to the public. But the right to voice criticism does not exist in a vacuum. Rather, the right must be exercised in a fashion that comports with the Code of Judicial Ethics.[13]

---

[12] The statutory definition of judicial misconduct requires "wilful violation" of the Code and past cases have defined that term. *In the Matter of Judicial Disciplinary Proceedings Against Tesmer*, 219 Wis. 2d 708, 729, 580 N.W.2d 307 (1998) stated:

> Prior judicial disciplinary cases have established that "wilful" means that the judge's conduct was not the result of duress or coercion and that the judge knew or should have known that the conduct was prohibited by the Code of Judicial Ethics. In [citation omitted], the statutory term "wilful" was understood to mean "freely made and not the result of duress or coercion."

[13] Judge Crawford asserts that his conduct is protected by his rights to freedom of speech and to petition the government. But that defense is irrelevant as we have decided this case. Unlike the panel, we have not ruled on the factual basis for his various allegations. Thus it is unnecessary to decide whether, as he claims, his conduct is sanctionable only if it violates an actual malice standard. *See New York Times v. Sullivan*, 376 U.S. 254 (1964) (defamation claim by public official against newspaper requires proof of actual malice). We also are not sanctioning Judge Crawford for having petitioned this court, whatever the truthfulness of the statements in that petition. Finally, we note regardless that in general judges are subject to some limitation on their constitutional rights that might not otherwise apply to private citizens. *See In the Matter of Disciplinary Proceedings Against Gorenstein*, 147 Wis. 2d 861, 434 N.W.2d 603 (1989); *In re Honorable Charles E. Kading*, 70 Wis. 2d 508, 235 N.W.2d 409 (1975); *Seraphim*, 97 Wis. 2d 485. As

¶ 38. In imposing discipline in this case, which may be reprimand, censure, suspension, or removal,[14] we employ the standard stated in *In the Matter of Judicial Disciplinary Proceedings Against Dreyfus*, 182 Wis. 2d 121, 129, 513 N.W.2d 604 (1994): "[t]he discipline imposed should be determined by the extent that the public needs protection from unacceptable judicial behavior, based upon the seriousness of the judge's misconduct and the likelihood that it would recur." Discipline is not intended to punish the judge. Further, we impose discipline on a de novo basis, although the panel's recommendation is entitled to some deference. *In the Matter of the Complaint Against Seraphim*, 97 Wis. 2d 485, 513, 294 N.W.2d 485 (1980).

¶ 39. The sanction that we impose must convey to the public the gravity with which this court views judicial misconduct. Those who sit in judgment in both civil and criminal matters, in which the lives and livelihood of the citizens of this state are involved, must be above reproach. When a judge fails to live up to the demanding, but necessary, standards that are imposed

---

*Scott v. Flowers*, 910 F.2d 201, 212 (5th Cir. 1990), stated: "[T]he state may restrict the speech of elected judges in ways that it may not restrict the speech of other elected officials."

[14] Article VII, Section 11 of the Wisconsin Constitution states:

> Each justice or judge shall be subject to reprimand, censure, suspension, removal for cause or for disability, by the supreme court pursuant to procedures established by the legislature by law. No justice or judge removed for cause shall be eligible for reappointment or temporary service. This section is alternative to, and cumulative with, the methods of removal provided in sections 1 and 13 of this article and section 12 of article XIII.

upon the elected judiciary, the integrity of the entire judicial process can be only reaffirmed by a sanction commensurate with the conduct.

¶ 40. Past judicial misconduct cases before this court are of limited usefulness in setting the sanction appropriate for this case, which involves unique circumstances. We have not established, nor will we here, a "bright line" standard when, for example, reprimand or censure is warranted as opposed to suspension. Each case is different, and is considered on the basis of its own facts. This individualized approach to discipline, however, is guided by some general principles.

¶ 41. Suspension and removal from office are "drastic measures," generally reserved for very serious or repeated violations of the Code. *Seraphim*, 97 Wis. 2d at 513. Factors considered in establishing the length of a suspension, either in aggravation or in mitigation, have included a history of prior judicial misconduct (in *Gorenstein* and *In the Matter of the Complaint Against Van Susteren*, 118 Wis. 2d 806, 348 N.W.2d 579 (1984)), and the presence of a remorseful and cooperative attitude (in *Dreyfus*).

¶ 42. Judge Crawford has engaged in seriously unacceptable judicial behavior. He has demonstrated no understanding of the impropriety of his behavior and therefore has expressed no remorse for it. Indeed, he has continuously portrayed himself as a maverick, an innocent victim of a "hostile work environment" who has an absolute "right to be obnoxious in [his] public expression." He apparently believes that it is perfectly ethical for one judge to threaten another in order to overcome his reasoned judgment and decide a disputed issue on the basis of something other than the merits, indeed, on the basis of extraneous personal and politi-

cal considerations. This demonstrates a serious disregard for the responsibilities of a judge.

¶ 43. On the other hand, Judge Crawford has not previously been disciplined. Accordingly, we decline the Commission's invitation to remove him from office. While Judge Crawford's misconduct was serious, it was not so substantial a threat to the public as to warrant the ultimate sanction of removal. It did not occur in the performance of his adjudicative role, and it did not affect the specific rights of any litigant or member of the public. His misconduct occurred in the context of an internal administrative matter, and implicated more generalized concerns.

¶ 44. To be sure, Judge Crawford's willingness to resort to personal, political threats in his running feud with successive chief judges was disturbingly out-of-bounds and clearly unethical. His tactics were vigorously and properly resisted, and therefore did not accomplish their purpose. The record contains no evidence that Judge Crawford has engaged in unethical behavior in the cases that come before him on the bench. Therefore, we also conclude that Judge Crawford's conduct does not warrant the one-year suspension recommended by the panel. A lesser sanction will suffice both to protect the public and to convey to Judge Crawford the impropriety of his conduct such that it is unlikely to recur.

¶ 45. Clearly, however, reprimand or censure alone is insufficient. Judge Crawford misused his judicial position, calling into question his understanding of and capacity to abide by the rules that govern all judges in their conduct on and off the bench. ██

¶ 46. We conclude that the appropriate sanction is a suspension from judicial office for a period of 75

days. This period is commensurate with the gravity of Judge Crawford's misconduct and the extent to which it jeopardized public confidence in the integrity and independence of the judiciary. This suspension is sufficiently long to impress upon Judge Crawford the fundamental requirements of judicial office and to demonstrate to the public the judiciary's dedication to preserving integrity within its ranks.

¶ 47. IT IS ORDERED that Judge Crawford's conduct merits discipline. He is hereby suspended from the office of circuit judge without compensation, and prohibited from exercising any of the powers or the duties of a circuit judge in the state of Wisconsin, for a period of 75 days, commencing July 31, 2001.