In the Matter of Judicial Disciplinary Proceedings Against the Honorable Annette K. Ziegler.

Wisconsin Judicial Commission, Complainant,

v.

The Honorable Annette K. Ziegler, Respondent.

Supreme Court

*No. 2007AP2066–J. Decided May 28, 2008.*

2008 WI 47

(Also reported in 750 N.W.2d 710.)

254

255

256

BUTLER, JR., J., dissents.

ZIEGLER, J., took no part.

¶ 1. PER CURIAM. The court is called upon to determine whether a judge's conduct in presiding at 11 cases in which the judge's spouse was a director of one of the parties constitutes misconduct under SCR 60.04(4)(e)1. of the Code of Judicial Conduct and Wis. Stat. § 757.81(4)(a).[1]

¶ 2. Washington County Circuit Judge Annette K. Ziegler presided in 11 cases in which the West Bend Savings Bank was a party when the Judge's spouse was a director of the Bank. The applicable Code rule, SCR 60.04(4)(e)1., requires a judge to recuse herself from presiding in a case in which the judge's spouse is a director of a party to the proceeding.

¶ 3. Judge Ziegler's conduct in presiding in the 11 cases falls within the plain meaning of the mandatory rule of the Code and constitutes misconduct as defined by the legislature. Accordingly, we conclude as a matter of law that the Judge violated the Code as charged.

¶ 4. Having made this determination, we are required to determine the discipline to be imposed upon Judge Ziegler, who is now a member of this court.[2] Article VII, Section 11 of the Wisconsin Constitution provides that judges shall be subject to reprimand,

---

[1] Misconduct includes "willful violation of a rule of the Code of Judicial Ethics." Wis. Stat. § 757.81(4)(a).

[2] In April 2007 Judge Ziegler was elected to a ten-year term on this court in a contested election. Judge Ziegler began her service on this court on August 1, 2007.

censure, suspension, or removal for cause in disciplinary proceedings.[3] To determine the discipline to be imposed, the court considers the purposes of discipline, the mitigating and aggravating circumstances, and the discipline imposed in similar cases.

¶ 5. A prime purpose of judicial discipline is to foster public trust and confidence in the judicial system. The purpose of SCR 60.04(4)(e)1. is to promote the public's confidence that judicial decisions are free from favoritism. The essence of SCR 60.04(4)(e)1. in absolutely prohibiting a judge from sitting on a case in which the judge's spouse is a director of a party is to avoid the perception that the judge is unfair and partial. If a judge complies with SCR 60.04(4)(e)1., no question will ever arise about a judge's favoritism toward a party to the litigation when the judge's spouse is a director.

¶ 6. The harm caused by a violation of this Code provision exists even though the judge reaches the correct decision in the particular case and the judge does not receive any personal benefit from the decision in the case. All judges are obliged to adhere to SCR 60.04(4)(e)1. Willful, though inadvertent, lapses violate the Code. Inadvertent failure to recognize a violation is far different from open defiance of a rule, and it affects the discipline to be imposed. After careful consideration of the mitigating and aggravating circumstances, we

---

[3] Article VII, Section 11 of the Wisconsin Constitution provides:

> Each justice or judge shall be subject to reprimand, censure, suspension, removal for cause or for disability, by the supreme court pursuant to procedures established by the legislature by law. No justice or judge removed for cause shall be eligible for reappointment or temporary service. This section is alternative to, and cumulative with, the methods of removal provided in sections 1 and 13 of this article and section 12 of article XIII.

260

conclude that Judge Ziegler's failure to recuse herself from these 11 cases or obtain a waiver diminishes public confidence in the legal system.

¶ 7. Not every transgression of the Code, however, will result in disciplinary action. Whether disciplinary action is appropriate, and if so, the degree of discipline to be imposed, is determined through a reasonable and reasoned application of the text of the Code and depends on such factors as the seriousness of the transgression, whether a pattern of improper activity exists, and the effect of the improper activity on others or on the judicial system.[4] The question becomes what discipline should be imposed.

¶ 8. The appropriate sanction to be imposed here is a public reprimand. Any discipline less severe than a public reprimand would not adequately convey the gravity with which this court views Judge Ziegler's violation of a bright-line rule of the Code of Judicial Conduct. Any discipline less severe would not comport with fostering public trust and confidence in the judicial system.

¶ 9. "Censure" appears in the Wisconsin constitution as the second possible sanction after reprimand. "Censure" has not previously been discussed in a judicial disciplinary proceeding in this state. No one has raised censure as a possible discipline in the instant case. We therefore do not address censure except to say that "censure" seems to be a form of discipline in the constitution more severe than "reprimand" and less severe than "suspension."

¶ 10. Suspension and removal from office are "drastic measures," generally reserved for serious,

---

[4] Code of Judicial Conduct, SCR 60 Preamble.

repeated or persistent violations of the judicial code.[5] Although the violations in the instant case are serious and were willful as defined in the statute, the violations were, as we explain below, also inadvertent. The Judicial Commission has characterized the violations as resulting from neglect and as serious.

¶ 11. Furthermore, a discipline of suspension or removal is not necessarily consistent with our past judicial and attorney discipline cases. Prior judicial misconduct cases in which judges received a sanction more severe than a reprimand all involved some degree of moral culpability that is not present here.

¶ 12. The instant case presents a troublesome question about the level of discipline. As in all disciplinary cases, the court must be fair to the respondent judge and must also protect the public. We conclude, however, that neither suspension nor removal is an appropriate sanction and that the appropriate discipline to be imposed here is a public reprimand.

¶ 13. We begin with a brief summary of the procedure followed in this disciplinary matter. We then discuss the misconduct and the rule violated. Finally, we discuss the discipline to be imposed.

¶ 14. The allegations of misconduct arose in March 2007 during Judge Ziegler's election campaign to become a member of this court. Judge Ziegler has repeatedly (directly and indirectly) asked the Judicial Conduct Panel and this court to discount the allegations and the level of discipline to be imposed because the allegations were raised by political opponents in the judicial election campaign.[6] We agree with the Judicial-

---

[5] *In re Complaint Against the Honorable Christ T. Seraphim,* 97 Wis. 2d 485, 513, 294 N.W.2d 485 (1980).

[6] *See, e.g.,* Transcript of the Hearing of the Judicial Conduct Panel at 27–29.

Commission that the fact that the allegations of misconduct were made during an election does not mean that the allegations may be given short shrift by the Commission or the court in determining whether the conduct alleged violated SCR 60.04(4)(e)1. of the Code of Judicial Conduct or in determining the level of discipline.

¶ 15. In response to a question by Judge Dykman, a member of the Judicial Conduct Panel, about the significance of the fact that "the brouhaha" about Judge Ziegler's conduct occurred in the midst of a contested political election, James Alexander, Executive Director of the Judicial Commission, replied that "in the sense of making findings of fact, conclusions of law and recommended discipline, the public brouhaha must, in fact, be ignored. The Commission worked very hard to do just that very thing." Mr. Alexander explained that an allegation during an election cycle of a violation of the Code that occurred prior to the election should be treated the same as one that was not made in an election cycle, namely, the Commission is to treat each allegation on the merits of the allegation regardless of the source of the complaint. What "we're trying to protect is the integrity and impartiality and independence of the judicial system."[7] We agree with Mr. Alexander.

I

¶ 16. On March 19, 2007, the Judicial Commission issued a press release acknowledging receipt of the Wisconsin Democracy Campaign's request for an investigation of Judge Ziegler, stating that it would be reviewing the request to determine whether to authorize an

[7] Transcript of the Hearing of the Judicial Conduct Panel at 55–57.

investigation, and advising that its proceedings are confidential.[8] On April 3, 2007, Judge Ziegler was elected as justice of this court. On April 20, 2007, the Judicial Commission publicly confirmed that at its meeting held on that day the Judicial Commission authorized an investigation of allegations of misconduct filed against Judge Ziegler and that the "Commission proceedings in this matter remain confidential. The Commission will have no other comment on the investigation"[9]

¶ 17. On September 6, 2007, the Judicial Commission filed a complaint against Judge Ziegler asserting that it had found probable cause to believe she had violated a rule in SCR Chapter 60, Code of Judicial Conduct. Contemporaneous with the filing of the complaint, Judge Ziegler filed a response in which she admitted, with explanations, the allegations of the complaint. The Judicial Commission and Judge Ziegler also filed on September 6, 2007, a Stipulation and Joint Recommendation, agreeing that Judge Ziegler admitted the allegations in the complaint, including that she presided in 11 cases in which a Bank was a party to the proceeding at the same time that the Judge's spouse wasa director of the Bank,[10] and that the Judge's presid-

---

[8] The press release is filed as part of Judge Ziegler's Petition to the Wisconsin Supreme Court To Take Jurisdiction of an Original Action, Supreme Court File 2007AP947–OA, *State ex rel. Ziegler v. State of Wisconsin Ethics Board* at A18. This original action is discussed later.

[9] The press release is filed as part of Judge Ziegler's Petition to the Wisconsin Supreme Court To Take Jurisdiction of an Original Action, Supreme Court File 2007AP947–OA, *State ex rel. Ziegler v. State of Wisconsin Ethics Board* at A19. This original action is discussed later.

[10] From March 1, 2001, and at all times relevant to the facts set forth in this opinion, Judge Ziegler's husband, J.J. Ziegler, was

ing in these 11 cases was a willful violation of SCR 60.04(4)(e)1. of the Code of Judicial Conduct. The Commission and the Judge agreed that the discipline should be a public reprimand.

¶ 18. On September 10, 2007, this court referred the matter to the chief judge of the court of appeals for the appointment of a Judicial Conduct Panel composed of three judges of the court of appeals.[11] The Judicial Conduct Panel is charged with making "findings of fact, conclusions of law and recommendations regarding appropriate discipline for misconduct" and filing its findings, conclusions and recommendations with the supreme court.[12] "The allegations of the complaint or petition must be proven to a reasonable certainty by evidence that is clear, satisfactory and convincing."[13] A stipulation does not bind the Judicial Conduct Panel as to either the facts or proposed appropriate discipline.[14]

¶ 19. The Judicial Conduct Panel posed written questions to the Judge and the Judicial Commission for

a paid member of the board of directors of the West Bend Savings Bank, located in the City of West Bend, Washington County, Wisconsin. J.J. Ziegler's compensation for his service as a director was a flat fee of $20,000 per year, the same as that paid to other outside directors.

[11] On September 14, 2007, the Honorable Richard S. Brown, chief judge of the court of appeals, appointed the Honorable Ralph Adam Fine and the Honorable Ted E. Wedemeyer, Jr., District I Court of Appeals judges, and the Honorable Charles P. Dykman, District IV Court of Appeals judge, to serve as members of the Judicial Conduct Panel to hear the Judicial Commission's allegations against Judge Ziegler.

[12] Wis. Stat. § 757.89.

[13] *Id.*

[14] *In re Judicial Disciplinary Proceedings Against Breitenbach,* 167 Wis. 2d 102, 120, 482 N.W.2d (1992).

their briefing. It acted within its discretion in posing written questions to the parties, not to broaden the scope of the allegations against Judge Ziegler, but rather to insure that it had sufficient information to determine whether all the allegations in the Judicial Commission's complaint had in fact been proven to a reasonable certainty by evidence that is clear, satisfactory and convincing and also, importantly, to assist it in determining an appropriate level of discipline.

¶ 20. The Judicial Conduct Panel held a hearing on November 19, 2007. Although Judge Ziegler appeared in person at the hearing, the panel did not hear testimony from her or any other witnesses. Instead the Judicial Conduct Panel decided to hear only argument by James Alexander, representing the Judicial Commission, and Attorney James R. Troupis, representing Judge Ziegler. The Judicial Conduct Panel decided to rely on the assertions of fact in the documents before it, the pleadings, and the stipulation, as well as the assertions of fact made by counsel in the briefs and in argument. Some of the Judicial Conduct Panel's Findings of Fact are based on assertions made in the brief filed by counsel on behalf of Judge Ziegler, on the brief of the Judicial Commission, and on counsels' assertions at oral argument before the Panel.

¶ 21. This court is now faced with having to rely upon the assertions of fact made by counsel in the briefs and in argument even though statements of counsel ordinarily do not constitute evidence supporting a finding of fact. The general rule is stated in the Wisconsin civil jury instruction 110, instructing jurors to "consider carefully the closing arguments of the attorneys, but their arguments, conclusions, and opinions are not evidence."

¶ 22. The Judicial Conduct Panel delivered a written Report to this court on January 3, 2008,[15] concluding that the stipulation correctly set forth the facts of the 11 cases at issue and correctly concluded that the Judge violated SCR 60.04(4)(e)1. of the Code. The Judicial Conduct Panel recommended that Judge Ziegler be publicly reprimanded.

¶ 23. After the Judicial Conduct Panel issued its report, this court invited the parties to file briefs. Both parties informed the court that the record contained sufficient materials for the court to take the matter under advisement and that neither party would be filing a brief.

¶ 24. This court reviews the findings of fact, conclusions of law and recommendation for discipline of the Judicial Conduct Panel.[16] This court accepts the findings of fact of the Judicial Conduct Panel unless they are clearly erroneous.[17] We decide questions of law (such as the interpretation and application of the Code)

---

[15] Wisconsin Stat. § 757.89 provides that "the panel shall make findings of fact, conclusions of law and recommendations regarding appropriate discipline for misconduct or appropriate action for permanent disability and file the findings, conclusions and recommendations with the supreme court."

[16] Section 757.91 provides:

**Supreme court; disposition.** The supreme court shall review the findings of fact, conclusions of law and recommendations under s. 757.89 and determine appropriate discipline in cases of misconduct and appropriate action in cases of permanent disability. The rules of the supreme court applicable to civil cases in the supreme court govern the review proceedings under this section.

[17] *In re Judicial Disciplinary Proceedings Against Crawford*, 2001 WI 96, ¶ 10 n.5, 245 Wis. 2d 373, 629 N.W.2d 1.

and the appropriate discipline independently of the Panel, benefiting from its reasoning and analysis.

■

¶ 25. The ultimate responsibility for reviewing the determination of the facts, for interpreting the Code of Judicial Conduct and applying the Code to the facts, and for deciding the appropriate discipline is this court's, adhering to the established standard of review.

## II

■

¶ 26. The Judge, the Judicial Commission, and the Judicial Conduct Panel agree on the following facts that are the basis for the discipline proceeding: The Judge failed to recuse herself from presiding over 11 cases in which the West Bend Savings Bank was a party to the proceeding when her husband was a paid director of the Bank.[18] The Judge did not disclose her husband's relationship with the Bank or obtain a waiver of recusal in any of the 11 cases.[19]

---

[18] Judicial Conduct Panel Finding of Fact No. 22. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 1; Judicial Commission Complaint No. 5.

[19] Judicial Conduct Panel Finding of Fact No. 22. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 1; Judicial Commission Complaint No. 6.

Supreme Court Rule 60.04(6) provides:

> A judge required to recuse himself or herself under sub. (4) may disclose on the record the basis of the judge's recusal and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive recusal. If, following disclosure of any basis for recusal other than personal bias or prejudice concerning

¶ 27. The record supports these findings of fact of the Judicial Conduct Panel. Nothing in the record casts any doubt about the findings with respect to the 11 cases. We accept the Panel's findings of fact describing the 11 cases; they are not clearly erroneous.

¶ 28. The 11 cases at issue were filed in the circuit court from 2001 to 2006. The 11 cases were randomly assigned in Washington County to Judge Ziegler. In each of the 11 cases, she took some action as a judge.[20]

¶ 29. The following summary of the cases in chronological order is taken from the findings of fact of the Judicial Conduct Panel.[21] In each of the following cases Judge Ziegler was the presiding judge, the West Bend Savings Bank was a party to the proceeding, and the Judge's spouse was a director of the Bank:

a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be required to recuse himself or herself and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

[20] In addition to presiding over the 11 cases, 40 additional cases involving the West Bend Savings Bank were also randomly assigned to Judge Ziegler by the clerk of the circuit court over a period of six years. In those 40 cases, a default judgment was entered by staff in the clerk of circuit court's office, using Judge Ziegler's signature stamp. The Judge did not see the files of those cases or take any personal action in them.

[21] Judicial Conduct Panel Finding of Fact No. 22. The description of the cases is verbatim from the Judicial Conduct Panel, except that the court has substituted "Judge" for "Justice" to accurately reflect historical events. The cases are also described in the Judicial Commission's complaint at ¶ 5, the allegations of which the Judge admitted in her stipulation with the Commission. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand, ¶ 1.

1. *West Bend Savings Bank v. McBride*, 2001CV645. This was a foreclosure action in which the property had been abandoned. The principal defendant did not appear. The attorney for a subordinate defendant filed a notice of appearance, but did not appear at any hearing. The bank moved for default judgment. Only the bank appeared at the hearing, and Judge Ziegler granted the motion and entered judgment for the bank. The property was subsequently sold, and Judge Ziegler confirmed the sale. Only the bank appeared at the confirmation hearing, and no party objected to the confirmation of the sale.

2. *West Bend Savings Bank v. Wright*, 2001SC1468. This was a replevin action. At the hearing, the defendant appeared without counsel and informed the court that he had not made the payments under the loan and that he did not have a defense to the action. Judge Ziegler signed an order for judgment of replevin.

3. *West Bend Savings Bank v. S.H. Friedenheim*, 2002CV373. This was a foreclosure action. The principal defendant did not appear. The bank moved for default judgment and, following a hearing at which only the bank appeared, Judge Ziegler granted the motion and entered a default judgment in favor of the bank. During the litigation, Judge Ziegler appointed a senior vice-president of the bank as receiver for the property. The property was subsequently sold, and Judge Ziegler confirmed the sale. Only the bank appeared at the confirmation hearing and no one objected to the confirmation of the sale.

4. *West Bend Savings Bank v. Volgmann*, 2002CV602. This was a foreclosure action. The defendant appeared by counsel, but did not file an answer or otherwise contest the complaint. The bank moved for summary judgment. The defendant's attorney objected in writing, but did not appear at the hearing, and did not otherwise pursue the objection. Judge Ziegler granted summary judgment to the bank, and entered a judg-

ment of foreclosure. The defendant redeemed the property prior to the foreclosure sale. Four attorneys appeared in the course of this case, and the bank's request for an adjournment was granted by the clerk of courts.

5. *West Bend Savings Bank v. Oberdas,* 2003SC172. Prior to the scheduling of any court proceedings, the parties settled the case. The parties filed a signed stipulation with the clerk of circuit court. The clerk routed the stipulation to Judge Ziegler who signed the stipulation. The stipulation provided that judgment for the bank could be automatically entered if the defendant did not keep current on loan payments. The bank later filed an affidavit averring that the defendant had not kept current on the loan, and pursuant to the stipulation, Judge Ziegler signed an order for judgment.

6. *West Bend Savings Bank v. Meyer,* 2003SC1360. The bank filed an action for replevin. At a hearing at which the defendants appeared without counsel, the parties informed Judge Ziegler that a settlement had been reached before the hearing and that the defendants had made arrangements to pay the debt. Upon agreement of the parties, Judge Ziegler signed an order for judgment of replevin, and judgment was entered. The bank agreed not to execute the judgment so long as the defendants continued to make payments on the loan. The settlement was reached before the hearing and Judge Ziegler was not involved in any settlement discussions.

7. *West Bend Savings Bank v. Haugen,* 2005SC089. The bank sought to recover a vehicle that served as collateral to a loan. A defendant, Eric Haugen, appeared before the clerk of circuit court at a February 14, 2005 hearing. Haugen was not represented by an attorney and he admitted owing the money. Judge Ziegler entered an order granting possession of the vehicle to the bank.

8. *West Bend Savings Bank v. Haugen,* 2005SC789. This case was related to the previous case, No. 2005SC789.

On July 5, 2005, Eric Haugen appeared before the clerk of circuit court. The clerk set an adjourned date by which Haugen was to file an answer. A second defendant did not appear, and a default judgment was entered by the clerk, using Judge Ziegler's signature stamp. On July 18, 2005, Eric Haugen appeared, and admitted owing money to the bank. A judgment for $5,092.57 was entered on July 19, 2005, by the clerk of courts, using Judge Ziegler's signature stamp. A contempt hearing took place on September 12, 2005. Haugen appeared, and the bank advised Judge Ziegler that Haugen was not in contempt of court. The second defendant, however, did not appear, and Judge Ziegler found the second defendant in contempt of court and ordered that the second defendant spend 30 days in jail; alternatively, the second defendant could purge the contempt by either paying $5,092.57 or by submitting a financial disclosure statement. The second defendant submitted the financial disclosure statement, and the contempt was purged.

9. *West Bend Savings Bank v. Kidd,* 2006SC844. The nature of this lawsuit is not apparent from this record. The defendant wrote the court on June 19, 2006, asking that a hearing scheduled for June 26, 2006, be rescheduled. By a message left on an answering machine, the defendant was told to call the court at 1:30 p.m. on June 26, and that she could appear at the hearing by telephone. On the day of the hearing, the defendant appeared by telephone but the bank did not appear because it had obtained an adjournment of the hearing from the clerk's office, without Judge Ziegler's involvement. The defendant requested a new hearing date, and Judge Ziegler granted that request. All subsequent proceedings in this case were handled by a different judge who entered judgment in favor of the bank.

10. *West Bend Savings Bank v. Blackhawk Repossession Investigation and Towing Services, LLC,* 2006CV037. The bank brought an action to recover

272

$28,160.33, as the unpaid balance on a loan, and to recover two vehicles that secured the loan. The defendant, without counsel, filed an answer. The bank moved for summary judgment. The defendant did not appear at the summary judgment hearing. Judge Ziegler told the clerk to call the defendant at its provided telephone number, but the call was blocked on the receiving end. Judge Ziegler granted summary judgment in favor of the bank, and signed an order for replevin.

11. *West Bend Savings Bank v. Lopacinski*, 2006CV045. The bank filed a complaint against Scott A. Lopacinski seeking $45,000. Lopacinski represented himself and, in his answer, claimed he was the victim of a Nigeria-based computer scam. Lopacinski alleged that he had received a check for $45,000 from an attorney in Nigeria who asked Lopacinski to send him a wire transfer in that amount. At Lopacinski's request, the Bank sent a wire transfer for $45,000 to the attorney in Nigeria; however, the check received by Lopacinski was counterfeit and, therefore, it was not honored by the bank on which it was drawn. The bank moved for summary judgment. Judge Ziegler held a hearing on the motion on May 22, 2006. Lopacinski informed Judge Ziegler that he had no legal defense to the motion. Judge Ziegler granted summary judgment to the bank, finding, as a matter of law, that no issue of fact was presented. Judge Ziegler signed an order for summary judgment in favor of the bank for $46,425, plus attorneys' fees and costs.

¶ 30. Apparently Judge Ziegler sat on cases involving the Bank before her husband became a director in 2001 and continued to sit on cases involving the Bank after her husband became a director. In sitting on these cases from the latter part of 2001 through the first half of 2006, the Judge was apparently following her past practice, instead of changing her practice because of changed family circumstances. The Judge

explained in her response to the Complaint of the Wisconsin Judicial Commission that "[r]egrettably, Judge Ziegler rotely continued her past practice of hearing West Bend Savings cases and states that she inadvertently overlooked her responsibilities under the conflict rules."[22]

¶ 31. Supreme Court Rule 60.04(4)(e)1. of the Judicial Conduct Code governs this discipline proceeding. It provides in pertinent part that a judge shall recuse herself in a proceeding when the facts and circumstances the judge knows establish that the judge's spouse is a director of a party to the litigation. The text of SCR 60.04(4)(e)1. is clear and mandatory; it contains no exceptions. The pertinent provisions of SCR 60.04(4)(e)1. applicable to the instant case set forth a bright-line test. In contrast, no bright-line rules apply to a judge's need to recuse on the basis of stock ownership. Without question, the 11 cases at issue fall within the bright-line rule of SCR 60.04(4)(e)1.

¶ 32. The following full text of SCR 60.04(4)(e)1. describes the circumstances of the present case as well as numerous circumstances not involved in the present matter. The text is quoted in full with the words relevant to the present case italicized and in bold.

> SCR 60.04 **A judge shall perform the duties of judicial office impartially and diligently.** *The judicial duties of a judge take precedence over all the judge's other activities.* The judge's judicial duties include all the duties of the judge's office prescribed by law.
>
> . . . .

---

[22] Judge Ziegler's Response to Complaint of Wisconsin Judicial Commission at 2.

(4) Except as provided in sub. (6) for waiver, *a judge shall recuse himself or herself in a proceeding when the facts and circumstances the judge knows* or reasonably should know *establish one of the following* or when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reasonably question the judge's ability to be impartial:

. . . .

(e) The judge or *the judge's spouse,* or a person within the third degree of kinship to either of them, or the spouse of such a person *meets one of the following criteria:*

1. *Is a* party to the proceeding or an officer, *director* or trustee *of a party.*

■

¶ 33. Judge Ziegler did not recuse herself, as required by SCR 60.04(4)(e)1., in the 11 proceedings when she knew that her spouse was a director of a party to the proceeding. It is clear that Judge Ziegler's conduct violated the Code, as she so stipulated. We so hold.

### III

¶ 34. We turn now to the appropriate discipline. We examine the purpose of discipline, mitigating and aggravating factors, and our precedent.

■

¶ 35. *Purpose of Discipline.* Discipline is not imposed to punish the individual judge.[23] Rather, the purpose of judicial discipline, like the purpose of the

[23] *In re Judicial Disciplinary Proceedings Against Aulik,* 146 Wis. 2d 57, 77, 429 N.W.2d 759 (1988).

Code of Judicial Conduct, is to protect our court system and the public from misconduct. Discipline is designed to restore and maintain the dignity, honor, and impartiality of the judicial office.[24]

¶ 36. "A fair and impartial judge is the cornerstone of the integrity of the judicial system."[25] As James Alexander stated, "conflict of interest is a serious aspect of the Code of Judicial Conduct."[26] To maintain public confidence in the legal system, the appearance of impartiality is often as important as impartiality itself. The Alaska Supreme Court explained the importance of the role of an impartial judiciary in maintaining public confidence as follows:

---

[24] *In re Inquiry Concerning Patrick C. McCormick,* 639 N.W.2d 12, 16 (Iowa 2002).

The New Jersey Supreme Court recently discussed the importance of this factor in *In re Mathesius,* 910 A.2d 594, 608 (2006):

> The single overriding rationale behind our system of judicial discipline is the preservation of public confidence in the integrity and the independence of the judiciary. As we have noted before, "This Court cannot allow the integrity of the judicial process to be compromised in any way by a member of either the Bench or the Bar." Accordingly, institutional concerns figure prominently in cases involving judicial discipline. As the Supreme Court of Minnesota has observed, the standard of judicial conduct is a high one precisely "so that the integrity and independence of the judiciary may be preserved." Judicial misconduct "brings the judicial office into disrepute and thereby prejudices the administration of justice . . . and diminishes public respect for the judiciary." Because public confidence in judges is essential to maintaining the legal system, "misconduct by a judge brings the office into disrepute and thereby prejudices the administration of justice." [*In re Seaman,* 133 N.J. 67, 96–97, 627 A.2d 106 (1993) (citations omitted).]

[25] *In re Judicial Disciplinary Proceedings Against Laatsch,* 2007 WI 20, ¶ 13, 299 Wis. 2d 144, 727 N.W.2d 488.

[26] Transcript of Judicial Conduct Panel Hearing at 44.

Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all Sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system.[27]

¶ 37. Reasonable people would question the impartiality of a judge who presides over a case in which the judge's spouse is a director of a party to the proceedings.

¶ 38. "Public confidence in the integrity of the judicial system is essential. It is our responsibility, and the responsibility of every judge, to merit and maintain that confidence."[28] The discipline imposed must be commensurate with the conduct involved and must be "designed to foster confidence in the integrity the public has every right to expect and demand of its judicial system."[29]

¶ 39. We explained the purpose of discipline in *In re Judicial Disciplinary Proceedings Against Crawford*, 2001 WI 96, 245 Wis. 2d 373, 629 N.W.2d 1, as follows:

The sanction that we impose must convey to the public the gravity with which this court views judicial misconduct. Those who sit in judgment in both civil and

---

[27] *In re Proceeding under AS 22.300.070(c)_ in Relation to Karl S. Johnstone*, 2 P.3d 1226 (Alaska 2000) (quoting preamble to ABA Model Code of Judicial Conduct and preamble to Alaska Code of Judicial Conduct).

[28] *Aulik*, 146 Wis. 2d at 78.

[29] *Id.*

criminal matters, in which the lives and livelihood of the citizens of this state are involved, must be above reproach. When a judge fails to live up to the demanding, but necessary, standards that are imposed upon the elected judiciary, the integrity of the entire judicial process can be only reaffirmed by a sanction commensurate with the conduct.[30]

¶ 40. The Judicial Conduct Panel described the criteria that must be considered and weighed in imposing discipline as follows:

First, "[t]he purpose of judicial discipline is to protect the court system and the public it serves from unacceptable judicial behavior." *In re Judicial Disciplinary Proceedings Against Gorenstein,* 147 Wis. 2d 861, 873, 434 N.W.2d 603 (1989).

Second, the supreme court has made it clear that punishment is not a permissible consideration. *In re Judicial Disciplinary Proceedings Against Crawford,* 2001 WI 96, ¶ 38, 245 Wis. 2d 373, 629 N.W.2d 1 ("Discipline is not intended to punish the judge.")

Third, the supreme court has identified the following material discipline-considerations: "The discipline imposed should be determined by the extent that the public needs protection from unacceptable judicial behavior, based upon the seriousness of the judge's misconduct and the likelihood that it would recur." *In re Judicial Disciplinary Proceedings Against Dreyfus,* 182 Wis. 2d 121, 129, 513 N.W.2d 604 (1994).

Fourth, the discipline must be proportional: "Discipline imposed for judicial misconduct is to be responsive to the gravity of the misconduct—the actual harm or threat of harm it posed to those using our court

---

[30] *Crawford,* 245 Wis. 2d 373, ¶¶ 39–40.

system and to the system itself." *In re Judicial Disciplinary Proceedings Against Aulik,* 146 Wis. 2d 57, 77, 429 N.W.2d 759 (1988).

¶ 41. Judge Ziegler's conduct violated not only the plain language of the Code but also a principle underlying the Code: Judges should avoid partiality and even the appearance of partiality. Judge Ziegler's failure to recuse herself from these 11 cases or obtain a waiver raised the question of her ability to decide the cases impartially. Public confidence in the integrity of the judicial system was adversely affected when the Judge presided over cases in which her spouse was a director of a party.

¶ 42. The sanction imposed in this case must be sufficient to inform the public and the judiciary of the need for judges to adhere to the rules regarding recusal. Adherence to the rules of recusal is essential to the integrity of the judicial system on which the people of this state have the right to rely.

¶ 43. *Considering the Circumstances of the Case.* Each case must be carefully analyzed according to the particular circumstances of that case. Nevertheless, the following is a helpful, non-exclusive list of factors to guide the decision of the appropriate discipline in a discipline case:

(1) whether the misconduct is an isolated instance or evidenced a pattern of misconduct;

(2) the nature, extent and frequency of occurrence of the acts of misconduct;

(3) whether the misconduct occurred inside or outside the courtroom or courthouse;

(4) whether the misconduct occurred in the judge's official capacity or in his or her private life;

(5) whether the judge has acknowledged or recognized that the acts occurred;

279

(6) whether the judge has demonstrated an effort to change or modify his or her conduct;

(7) the extent to which the judge exploited his or her position to satisfy personal desires;

(8) the length of the judge's service on the bench;

(9) whether prior complaints were filed against the judge; and

(10) the effect the misconduct has upon the integrity of and respect for the judiciary.[31]

¶ 44. We explore these and other factors in determining the discipline to be imposed in the instant case, separating those factors we view in the instant case as mitigating factors and those we view as aggravating factors.

¶ 45. *Mitigating Factors.* We begin by considering mitigating circumstances, that is, circumstances that tend toward justifying less severe discipline for violation of a rule.

¶ 46. According to the record, Judge Ziegler was a fine circuit court judge and an active member of the judiciary contributing to the administration of the judicial system.

¶ 47. The Judge was admitted to the practice of law in Wisconsin in 1989.[32] She was appointed a circuit court judge in 1997, elected to that position in 1998, and reelected in 2004.[33] During her service as a circuit court judge, Judge Ziegler served as the Deputy Chief Judge

---

[31] *See McCormick,* 639 N.W.2d at 16.

[32] Judicial Conduct Panel Finding of Fact No. 43. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 6.

[33] Judicial Conduct Panel Finding of Fact No. 44. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 5.

for the Third Judicial Administrative District,[34] which encompasses Washington, Ozaukee, Jefferson, and Waukesha Counties.

¶ 48. Judge Ziegler has served on the faculty of the Wisconsin Judicial College.[35] She has also served on various committees within the judicial system, including the Criminal Jury Instructions Committee, the Criminal Bench Book Committee, the Judicial Education Committee, the Wisconsin Circuit Court Access Oversight Committee, the Juvenile Justice Advisory Committee, and the Children's Resource Project Coordinating Committee.[36] She volunteered for the Judicial Exchange Program between the court of appeals and the circuit courts in 1999, participating in several court of appeals cases through that program.[37]

¶ 49. Judge Ziegler was not the subject of any disciplinary action as an attorney.[38] She was not the subject of any judicial discipline or investigation prior to the investigation giving rise to the present proceeding.[39]

¶ 50. The Judicial Commission examined allegations that Judge Ziegler presided in some 40 additional cases involving the Bank. The Judicial Commission's

---

[34] Judicial Conduct Panel Finding of Fact No. 45. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 5.

[35] Judicial Conduct Panel Finding of Fact No. 46.

[36] Judicial Conduct Panel Finding of Fact No. 47.

[37] Judicial Conduct Panel Finding of Fact No. 48.

[38] Judicial Conduct Panel Finding of Fact No. 43. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 6.

[39] Judicial Conduct Panel Finding of Fact No. 44. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 5.

investigation revealed that in these cases a default judgment was entered by personnel of the Clerk of the Circuit Court's office, using the Judge's signature stamp without the Judge's seeing the files or taking any personal action in them.[40] The Judicial Commission determined that there was no willful violation of SCR 60.04(4)(e)1. in these cases.[41]

¶ 51. The parties' stipulation[42] and the Report of the Judicial Conduct Panel[43] concluded that Judge Ziegler did not gain or attempt to gain a financial advantage either for herself or for any member of her family by presiding over the 11 cases in which the Bank was a party to the proceedings. No one contended that Judge Ziegler's actions in the 11 cases were motivated by bias or partiality.[44] None of the litigants involved in the 11 cases filed a complaint with the Judicial Commission,[45] and despite the extensive publicity over this matter, none of the litigants in any of the cases sought to have a case reopened.[46]

¶ 52. The Panel also found as a fact that if Judge Ziegler had recused herself from the 11 cases, any other judge hearing the cases would have made the same decisions that Judge Ziegler made. This finding is supported in the record by Judge Ziegler's opinion about the cases.[47]

---

[40] Judicial Conduct Panel Finding of Fact No. 21.

[41] Judicial Conduct Panel Finding of Fact No. 21.

[42] Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 4.

[43] Judicial Conduct Panel Finding of Fact No. 42.

[44] Judicial Conduct Panel Finding of Fact No. 23.

[45] Judicial Conduct Panel Finding of Fact No. 26.

[46] Judicial Conduct Panel Finding of Fact No. 28.

[47] Judicial Conduct Panel Finding of Fact No. 42 states that Judge Ziegler reached the correct legal result in each of these 11

¶ 53. Judge Ziegler made no attempt to hide or conceal the fact of her husband's status as a director of the Bank.[48] She disclosed her husband's position as a director of the West Bend Savings Bank on the Statement of Economic Interests that she filed annually with the Wisconsin Ethics Board.[49]

¶ 54. Judge Ziegler's husband had other business relationships with the West Bend Savings Bank beyond his service as a director. On November 9, 2006, Judge Ziegler and her husband executed a mortgage on their residence in favor of the West Bend Savings Bank, as security for $2,000,000 in commercial loans extended by the bank to Judge Ziegler's husband.[50] The Judicial Conduct Panel found that Judge Ziegler "was not involved in obtaining the loans"[51] and that "there is no dispute but that . . . the loans . . . were 'arms length'

---

cases. The Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand (No. 4) states that "[t]here is no indication that any case was decided incorrectly." In the Settlement between Judge Ziegler and the Wisconsin Ethics Board Judge Ziegler stated that she did not contest the Report of Investigation. In the Report the Judge is quoted as having "stated that she believes that any judge would have handled the matters in the exact same way that she did and that she decided every case fairly based on the law and the facts."

[48] Judicial Conduct Panel Finding of Fact No. 9.

[49] Judicial Conduct Panel Finding of Fact No. 8.

Supreme Court Rule 60.05(8)(b) provides: "Financial reports. Except as provided in SCR 60.07, a judge shall file with the ethics board a timely financial report as required by section 19.43 of the statutes. . . ." Effective January 10, 2008, the newly-created Government Accountability Board assumed the combined responsibilities of the former State Ethics Board and State Elections Board.

[50] Judicial Conduct Panel Finding of Fact Nos. 14–16.

[51] Judicial Conduct Panel Finding of Fact No. 15.

transactions, and that neither [Judge] Ziegler nor her husband participated in the approval of the loans,"[52]

¶ 55. The basis of these findings appears to be a facsimile, which is appended to the brief that Judge Ziegler filed with the Judicial Conduct Panel, sent from counsel for West Bend Savings Bank to counsel for Judge Ziegler. Judge Ziegler's counsel wrote the counsel for the Bank asking (1) whether each of the loans was negotiated and concluded in arms-length transactions; (2) whether Judge Ziegler's husband approved any of these loans in his capacity as a director; (3) whether any applicable federal or state statute or regulation was violated by any of these loans; and (4) whether Judge Ziegler participated in the negotiation of any loans made to the Zieglers for commercial purposes. The attorney for the Bank wrote in response to the questions posed as follows: "1. Yes. 2. No. 3. No. 4. No."

¶ 56. The Judicial Commission's brief states that the Commission was aware that the Judge and her husband were customers of the Bank and other financial institutions but that the Commission had no specific knowledge of the amount of money Judge Ziegler and her husband borrowed from West Bend Savings Bank.[53] The Commission advised the Judicial Conduct Panel that the loans were not the subject of the Judicial Commission's investigation, and the Commission had no indication that any loan was obtained other than in the regular course of business.[54] This is the entire

---

[52] Judicial Conduct Panel Finding of Fact No. 16.

[53] Judicial Commission Brief to the Judicial Conduct Panel at 4.

[54] Judicial Commission Brief to the Judicial Conduct Panel at 5.

record relating to the loans. There is no additional information in the record about the loans.

¶ 57. Judge Ziegler listed the West Bend Savings Bank as a creditor on her 2006 Statement of Economic Interests.[55]

¶ 58. Judge Ziegler disclosed other relationships between her spouse and the Bank. Beginning in late 2006, a business in which Judge Ziegler's husband was a part owner rented commercial real estate to the West Bend Savings Bank, thereby creating a landlord-tenant relationship between that business and the Bank.[56] Judge Ziegler disclosed this relationship and the receipt of rental income from the West Bend Savings Bank on her 2006 Statement of Economic Interests.[57]

¶ 59. Judge Ziegler's husband has no financial interest in the West Bend Savings Bank.[58] The Judge's husband's primary business occupation is real estate development,[59] and he viewed his position on the West Bend Savings Bank's board of directors as a public service to the West Bend community.[60]

---

[55] Judicial Conduct Panel Finding of Fact No. 17.

[56] Judicial Conduct Panel Finding of Fact No. 18. Judge Ziegler disclosed the landlord-tenant relationship "and the receipt of rental income from the Bank, on her Statement of Economic Interests for 2006. The first rental payment was received after the conclusion of the last of the cases that are the subject of the Commission's Complaint." Judicial Conduct Panel Finding of Fact No. 19.

[57] Judicial Conduct Panel Finding of Fact No. 19. The Judicial Commission stated that it did not consider the lease of the property when making its disciplinary recommendations.

[58] Judicial Conduct Panel Finding of Fact No. 11.

[59] Judicial Conduct Panel Finding of Fact No. 13.

[60] Judicial Conduct Panel Finding of Fact No. 12.

¶ 60. When Judge Ziegler became aware, during her election campaign to become a member of this court, of the allegations of misconduct regarding her participation in cases involving the West Bend Savings Bank, she took corrective action to change the case assignment system in Washington County so that cases involving the Bank would no longer be assigned to her.[61] The Judge has also made arrangements with the supreme court commissioners to ensure that no case materials be transmitted to her in any case involving the Bank so long as her husband is serving on the Bank's Board of Directors.[62]

¶ 61. In the stipulation, Judge Ziegler acknowledged and expressed her deep regret for the errors in judgment she made and for any effect her conduct may have had on the Wisconsin judicial system.[63] She apologized to this court and to the public.[64]

¶ 62. Judge Ziegler cooperated with the Judicial Commission in its investigation.[65] She appeared in person before a closed session of the Commission on August 23, 2007, fully and forthrightly answered all questions put to her, and fully provided all documentation requested by the Commission.

---

[61] Judicial Conduct Panel Finding of Fact No. 30.

[62] Judicial Conduct Panel Finding of Fact No. 49. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 8.

[63] Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 7.

[64] Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 7.

[65] Judicial Conduct Panel Finding of Fact No. 41. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 3.

¶ 63. Judge Ziegler was forthright in discussing her conduct before the Wisconsin Ethics Board. The Board had conducted an investigation in March 2007 into substantially the same conduct that is the subject of the Judicial Commission's Complaint as violating Wis. Stat. § 19.46(1)(a).[66] On April 18, 2007, the Board filed a verified complaint against Judge Ziegler based on its Report of Investigation, concluding that there was probable cause to believe that Judge Ziegler had violated Chapter 19 of the Statutes.[67] The Complaint (with the March Report of Investigation attached) is limited to any violation of chapter 19; it does not address any violation of the Code of Judicial Conduct.[68] The Ethics Board set the Ziegler matter for a hearing before Reserve Judge David G. Deininger at 9:00 a.m. on May 17, 2007.[69]

¶ 64. On April 26, 2007, Judge Ziegler filed a petition in this court for leave to commence an original action and a motion for an order temporarily preventing the Wisconsin Ethics Board from proceeding on its verified complaint until the court determines whether the Board has jurisdiction. Judge Ziegler's argument in

[66] Judicial Conduct Panel Finding of Fact No. 31.

[67] Petition for the Wisconsin Supreme Court To Take Jurisdiction of an Original Action, Supreme Court File 2007AP947–OA, *State ex rel. Ziegler v. State of Wisconsin Ethics Board* at A12.

[68] Petition for the Wisconsin Supreme Court To Take Jurisdiction of an Original Action, Supreme Court File 2007AP947–OA, *State ex rel. Ziegler v. State of Wisconsin Ethics Board* at A1.

[69] Petition for the Wisconsin Supreme Court To Take Jurisdiction of an Original Action, Supreme Court File 2007AP947–OA, *State ex rel. Ziegler v. State of Wisconsin Ethics Board* at A12.

the petition was that her conduct had not violated Wis. Stat. § 19.46(1)(a) because the statute does not govern the "alleged failure of a circuit judge's failure to recuse."[70] Judge Ziegler's petition objected to the Ethics Board's publicly releasing the Investigation Report, arguing that the "inappropriate and detailed press release disseminated state-wide by the Ethics Board . . . , together with the publication of its 'Report of Investigation' . . . subjected Judge Ziegler to trial in the press before she had the opportunity to respond."[71]

¶ 65. On May 8, 2007, this court denied Judge Ziegler's petition for an original action and denied Judge Ziegler's request for an order staying the Ethics Board proceeding. These denials do not constitute a decision on the merits of the legal issues Judge Ziegler presented.

¶ 66. On May 15–16, 2007, Judge Ziegler and the Ethics Board signed an agreement settling the Ethics Board's potential action for violation of Wis. Stat. § 19.46(1)(a). The Ethics Board stated it found no evidence of Judge Ziegler's using her position to obtain financial gain or advantage for herself or her family.[72] Judge Ziegler stated she did not contest the Report of Investigation of the Ethics Board, which was made part of the settlement agreement, and Judge Ziegler paid a

---

[70] Petition for the Wisconsin Supreme Court To Take Jurisdiction of an Original Action, Supreme Court File 2007AP947–OA, *State ex rel. Ziegler v. State of Wisconsin Ethics Board* at 10.

[71] Petition for the Wisconsin Supreme Court To Take Jurisdiction of an Original Action, Supreme Court File 2007AP947–OA, *State ex rel. Ziegler v. State of Wisconsin Ethics Board* at 11–12.

[72] Judicial Conduct Panel Finding of Fact No. 35. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 5.

$5,000 forfeiture, plus costs of approximately $12,000, to the Wisconsin Ethics Board as a penalty for violating Wis. Stat. § 19.46(1)(a).[73] She agreed that her participation in cases in which the West Bend Bank was a party violated Wis. Stat. § 19.46(1)(a).[74]

¶ 67. Judge Ziegler's conduct violated the Code of Judicial Conduct because it was willful under the statutes, but at the same time her misconduct, according to the Judicial Commission, "resulted from her indifference to the Code of Judicial Conduct" and was "inadvertent."[75] Judge Ziegler's inadvertence is a mitigating factor. As we explained previously, the Judge had sat on cases involving the Bank before her husband became a director of the Bank and apparently just continued her past practice after he became a director.

¶ 68. Wisconsin Stat. § 757.81(4)(a) defines "misconduct" to mean, in part, "[w]illful violation of a rule of the code of judicial ethics."[76] Not every violation of the

---

[73] Judicial Conduct Panel Finding of Fact No. 36. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 6.

Wisconsin Stat. § 19.46(1)(a) prohibits a public official from "[t]ak[ing] any official action substantially affecting a matter in which the official, a member of his or her immediate family, or an organization with which the official is associated has a substantial financial interest."

[74] Judicial Conduct Panel Finding of Fact No. 33. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 4.

[75] Judicial Commission's Brief to the Judicial Conduct Panel at 8.

[76] Supreme Court Rule 60.04(4)(e) is a "rule of the code of judicial ethics" for purposes of Wis. Stat. § 757.81(4)(a). Rule

Code constitutes judicial "misconduct" warranting disciplinary action. Judge Ziegler's conduct in violation of rule SCR 60.04(4)(e)1. qualifies as judicial misconduct only if her violation was "willful" as that word is used in the statute.[77]

¶ 69. A violation of the Code of Judicial Conduct is "willful" for purposes of Wis. Stat. § 757.81(4) when the judge's conduct was not the result of duress or coercion and when the judge knew or should have known that the conduct was prohibited by the Code of Judicial Conduct.[78]

¶ 70. The Judicial Commission charged Judge Ziegler with a willful violation of the Code of Judicial

---

60.04(4) states that "[e]xcept as provided in sub. (6) for waiver, a judge *shall* recuse himself or herself in a proceeding" (emphasis added) under the circumstances enumerated therein. The preamble to the Code of Judicial Conduct, SCR 60, states in part that "[w]hen the text of a rule uses 'shall,' 'shall not' or 'may not,' it is intended to impose binding obligations the violation of which can result in disciplinary action."

In contrast to SCR 60.04(4)(e), other provisions in the Code of Judicial Conduct use the terminology "should" or "should not." "The use of 'should' or 'should not' in the [Code of Judicial Conduct] is intended to encourage or discourage specific conduct and as a statement of what is or is not appropriate conduct but not as a binding rule under which a judge may be disciplined." SCR 60.

[77] *See In re Judicial Disciplinary Proceedings Against Tesmer,* 219 Wis. 2d 708, 728, 580 N.W.2d 307 (1998) ("Our determination that Judge Tesmer's [conduct] . . . violated two rules of the Code of Judicial Ethics does not itself constitute a determination that she thereby engaged in judicial misconduct. Because the statutory definition of judicial misconduct specifies 'wilful violation of a rule of the code of judicial ethics,' there remains the issue of whether her violation of those rules was wilful.").

[78] *Tesmer,* 219 Wis. 2d at 729.

Conduct, citing Wis. Stat. § 757.81(4). In the stipulation, Judge Ziegler admitted the allegations in the complaint filed by the Judicial Commission, including that the violation was willful.

¶ 71. On the basis of the record and as a matter of law we conclude that Judge Ziegler's violation of the Code was willful. Throughout the relevant period of time, Judge Ziegler knew that her husband was a paid member of the Board of Directors of West Bend Savings Bank. Furthermore, as a matter of law Judge Ziegler was chargeable with the knowledge (i.e., had a duty to know) of the provisions of the Code of Judicial Conduct.[79] The Code of Judicial Conduct, SCR 60.04(4)(e)1., clearly proscribed Judge Ziegler's presiding over cases in which the West Bend Savings Bank was a party to the proceedings. Judge Ziegler therefore was, as a matter of law, chargeable with the knowledge (i.e., had a duty to know) that her conduct in the present case was prohibited by SCR 60.04(4)(e)1.[80]

¶ 72. Judge Ziegler was reminded of her husband's position as a director of the bank, and of the importance of her husband's position to her own position as circuit court judge, each time that Judge Ziegler disclosed her

_____

[79] *Id.*

[80] *See Tesmer,* 219 Wis. 2d at 730–32 (concluding that Judge Tesmer should have known that her conduct violated the Code of Judicial Conduct rule proscribing aggravated or persistent private communications designed to influence a judge's decision; also concluding that Judge Tesmer was not chargeable with the knowledge that her conduct violated the rule proscribing ex parte communications, because Judge Tesmer's interpretation of the rule proscribing ex parte communications was, although incorrect, consistent with common usage of the term "ex parte" and with case law applying the rule).

husband's position on the Statement of Economic Interests that Judge Ziegler filed annually with the Wisconsin Ethics Board. We agree with the Judicial Conduct Panel's conclusion of law that "[g]iven her knowledge of her husband's relationships with the Bank, red flags of danger were prominently flying" that Judge Ziegler did not see.[81]

¶ 73. Judge Ziegler offered the following explanation in the Report of Investigation by the State Ethics Board in March 2007 for her having sat in cases involving the Bank:

> [S]he simply did not consider that her sitting on cases involving West Bend Savings Bank was a conflict of interests. She stated that the Bank "is not how we make our living." She said that her husband is in the development business and if a case came before her involving his business she would know that, but she did not think of the bank as his business. She admitted that the Supreme Court rule was not present to her mind and would not have thought that Chapter 19 of the statutes applied.[82]

¶ 74. Judge Ziegler's violation of the Code of Judicial Conduct was willful under the statute and our case law.

■■■■

¶ 75. Although a judge may commit a "willful" violation constituting judicial misconduct when the judge has no actual knowledge that her conduct is prohibited by the Code, the judge's actual knowledge (or lack thereof) of the Code is relevant to the issue of

---

[81] Judicial Conduct Panel Conclusion of Law No. 6.

[82] Judicial Conduct Panel Finding of Fact No. 34. *See also* Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 2.

discipline.[83] In the parties' stipulation, the Judicial Commission "accepted" Judge Ziegler's "statement that [her] conduct was inadvertent."[84] The Judicial Conduct Panel also accepted that Judge Ziegler was in fact unaware that she was in violation of the Code of Judicial Conduct.[85]

¶ 76. In recommending a public reprimand, the Judicial Conduct Panel concluded that Judge Ziegler violated the Code of Judicial Conduct "without moral culpability, which, were that present, would require a different result."[86]

¶ 77. The record demonstrates that Judge Ziegler's willful violations of the Code of Judicial Conduct, though serious and inexcusable, do not rise to the level of knowing violations made in brazen contempt for the authority of the Code.

¶ 78. Finally, in determining discipline two additional mitigating circumstances exist: Judge Ziegler is alert to the dangers of conflicts of interest and, in all

---

[83] *See Tesmer,* 219 Wis. 2d at 733 (concluding that the severity of Judge Tesmer's misconduct was mitigated by her "good faith belief, albeit unjustified," that her conduct was not prohibited by the Code of Judicial Conduct).

[84] Judicial Commission and Judge Ziegler's Stipulation and Joint Recommendation for Reprimand No. 4.

[85] The Panel did not address this issue expressly in its findings of fact. However, in making its recommendation to this court, the Panel stated that Judge Ziegler did "not recogniz[e] that the Code of Judicial Conduct required her to either recuse herself from cases involving the Bank or notify the parties of her husband's directorship" and similarly stated that Judge Ziegler had a "lack of awareness of the Code provision [prohibiting her conduct] . . . ."

[86] Judicial Conduct Panel Recommendations at 24.

likelihood, will not repeat her conduct.[87] All judges in Wisconsin are, because of the extensive publicity of the present case, alert to their responsibilities under the Judicial Code of Conduct, the dangers of conflicts of interest, and the requirements of recusal.[88]

¶ 79. We turn now to aggravating circumstances, circumstances that tend toward justifying discipline more severe than a public reprimand.

¶ 80. *Aggravating circumstances.* An aggravating circumstance in the instant case is, as we have explained previously, that the Judge's misconduct may have had a negative effect on the public's respect for the judiciary.

¶ 81. Furthermore, the misconduct was repeated in 11 separate cases over a five-year period. Thus, the misconduct can be characterized as a pattern of conduct over a fairly long period of time, during which time the misconduct was not corrected. We recognize, however, that the 11 cases can also be viewed as several incidents of a single example of misconduct.

¶ 82. Another aggravating factor is that Judge Ziegler presided in several cases involving parties in which she or her husband owned substantial shares of stock.[89] In addition to investigating Judge Ziegler's participation in the 11 cases in which the West Bend Savings Bank was a party, the Judicial Commission also

---

[87] Judicial Conduct Panel Recommendations at 22 ("[A]s we have found, [Judge] Ziegler is now alert to the dangers of conflicts of interest.").

[88] Judicial Conduct Panel Recommendations at 22.

[89] Supreme Court Rule 60.04(4)(d) provides in relevant part that except when the judge obtains a waiver pursuant to SCR 60.04(6), a judge shall recuse himself or herself in a proceeding

investigated other allegations of misconduct, including her presiding over several cases in which she or her husband may have had an economic interest. Supreme Court Rule 60.04(4)(d) in summary provides that a judge shall recuse herself when she has an economic interest in a party to the proceeding or has more than a *de minimis* interest that could be substantially affected by the proceeding. On September 6, 2007, the Judicial Commission dismissed these allegations of misconduct with a letter as an "expression of concern or warning."[90] To her credit, the Judge made the Judicial Commission's "cautionary letter" public. Except for the letter, the file on this matter remains closed.

¶ 83. A troublesome factor raised by Judge Ziegler, the Judicial Conduct Panel, and the Judicial Commission in determining the level of discipline is the relevance of the judicial election campaign.

---

when the judge "knows that he or she, individually or as a fiduciary, or the judge's spouse . . . has an economic interest . . . in a party to the proceeding . . . ."

[90] A dismissal with warning is a "non-disciplinary disposition of an allegation in which the commission cautions the judge . . . not to engage in specified proscribed behavior . . . ." Wis. Admin. Code § JC 1.02(8) (Mar. 2004).

Wisconsin Admin. Code § JC 4.08(4) (Mar. 2004) authorizes the Judicial Commission to dismiss the matter with such expression of concern or warning as the Commission deems appropriate upon finding that any of the following exists:

(a) A violation of one or more standards of the code of judicial ethics that is not aggravated or persistent.

(b) A violation of a rule of the code of judicial ethics that is not wilful.

(c) A failure to perform official duties that is not willful or persistent.

(d) The allegation does not warrant prosecution because of its minor nature or other circumstances.

¶ 84. The Judicial Conduct Panel expressed interest in whether the timing of Judge Ziegler's admission of misconduct was relevant to discipline.[91] The Judicial Conduct Panel explicitly asked that the parties "address whether the timing of Judge Ziegler's admissions is relevant to the question of what discipline is appropriate for her judicial misconduct."

¶ 85. This request about timing was prefaced with the Judicial Conduct Panel's statements "that during the election campaign Judge Ziegler is reported to have denied that she had violated the Code of Judicial Conduct" and that in the subsequent settlement of the State Ethics Board's complaint and in the admissions to the Judicial Commission Judge Ziegler admitted violations of the Code and judicial misconduct.[92] The parties filed their written responses to the Judicial Conduct Panel's question by briefs filed on October 17, 2007. The Judicial Conduct Panel's question 8 posed to Judge Ziegler and the Judicial Commission reads in full as follows:

> 8. During her campaign for the Wisconsin Supreme Court, Judge Ziegler is reported to have denied that she had violated the Code of Judicial Ethics. In the subsequent settlement of the Ethics Board's complaint and in admissions to the Commission, Judge Ziegler has admitted violations of the Code of Judicial Ethics and

---

[91] After reviewing the complaint filed by the Judicial Commission and the Stipulation and Joint Recommendation, the Judicial Conduct Panel requested that the Judicial Commission and Judge Ziegler file briefs addressing, among other matters, "whether the timing of Judge Ziegler's admission is relevant to the question of what discipline is appropriate for her judicial misconduct." Order of the Judicial Conduct Panel at Item 8 (Sept. 26, 2007).

[92] Id.

judicial misconduct. The Commission and Judge Ziegler shall address whether the timing of Judge Ziegler's admissions is relevant to the question of what discipline is appropriate for her judicial misconduct.

¶ 86. The Judicial Conduct Panel found as a fact (Finding 29) that Judge Ziegler "has openly acknowledged her mistake and has apologized publicly for it."[93] Finding 29 is ambiguous. It does not state *when* Judge Ziegler made this open acknowledgment of her mistake and public apology.

¶ 87. If Finding of Fact 29 is that the "open acknowledgment and public apology" was *after* the election, the finding is supported by the record. If the Finding of Fact relates to a time period *before* the election, the finding of an "open acknowledgment and public apology" is not supported by the record.

¶ 88. The Judicial Commission responded as follows to the Judicial Conduct Panel's question about the relevance of the timing of Judge Ziegler's denial or admission of misconduct: "In the Commission's opinion, Judge Ziegler's admission of misconduct including the timeliness of it is relevant to the question of what discipline is appropriate for her misconduct."[94] The Judicial Commission also stated that it was "unaware that Judge Ziegler previously denied that she violated the Code of Judicial Conduct in regard to her presiding over the eleven West Bend Savings Bank cases." The Judicial Commission's full response is in the footnote.[95]

---

[93] Judicial Conduct Panel Finding of Fact No. 29.

[94] Judicial Commission's Brief to the Judicial Conduct Panel at 6.

[95] The Judicial Commission's full response to the Judicial Conduct Panel's question 8 is as follows:

¶ 89. Judge Ziegler's response by brief to the Judicial Conduct Panel's question about the relevance of the timing of her denial of misconduct was as follows: Any report that Judge Ziegler denied a violation of the Code with respect to her husband's directorship before the election "would be incorrect."[96] Judge Ziegler's brief asserts that before the election the Judge "publicly admitted that she could have handled things better, [and] is not perfect."[97] This is Judge Ziegler's total "response" to the question whether she denied violating the Code before the election. Judge Ziegler does not claim that she need not have responded publicly before the election to charges of violation of the Code. Rather, Judge Ziegler asserts that she responded publicly to these charges during the election campaign. Nothing in the Code of Judicial Conduct appears to require a judge to make any public statement in response to or in discussion of an allegation of a Code violation,[98] but if the judge discusses or responds pub-

---

The commission is unaware that Judge Ziegler previously denied that she violated the Code of Judicial Conduct in regard to her presiding over the eleven West Bend Savings Bank cases. Throughout the course of Commission proceedings Judge Ziegler admitted that her conduct in regard to those West Bend Savings Bank cases was a violation of the Code.

In the commission's opinion, Judge Ziegler's admission of misconduct including the timeliness of it is relevant to the question of what discipline is appropriate for her misconduct.

[96] Brief of Annette K. Ziegler to the Judicial Conduct Panel in Support of Wisconsin Judicial Commission Recommendation at 11.

[97] *Id.*

[98] This statement about the Code is not intended to refer to a response to allegations in a formal complaint or petition by the Judicial Commission.

licly to any such allegation the discussion or response must be made with absolute candor.[99]

¶ 90. Judge Ziegler's response to question 8 in her brief to the Judicial Conduct Panel is as follows:

To the extent that there was something "reported" about Judge Ziegler denying a violation of the Code of Judicial Conduct with respect to her husband's directorship, that report would be incorrect. On learning that she might have inadvertently violated the Code of Judicial Conduct by taking cases involving the Bank after her husband was named to the Board of Directors of the Bank (no party had ever before raised the issue), Judge Ziegler publicly admitted that she could have handled things better, is not perfect, wished that she had not found herself sitting in that situation and she repeatedly said that she welcomed an objective review. These types of comments came up at virtually every public forum (including a March 19, 2007 debate at Marquette Law School). In addition Judge Ziegler fully discussed the matter with the Wisconsin Ethics Board. *Those actions and admissions occurred prior to the Supreme Court Election.*

Not only did Judge Ziegler do her best to address matters related to the West Bend Savings Bank during the campaign, in advance of any election, she took immediate action with the District's Chief Judge . . . . Judge Ziegler immediately corrected the error when it

---

[99] Supreme Court Rule 60.06(3)(c) provides as follows:

A candidate for a judicial office shall not knowingly or with reckless disregard for the statement's truth or falsity misrepresent the identity, qualifications, present position, or other fact concerning the candidate or an opponent. A candidate for judicial office should not knowingly make representations that, although true, are misleading, or knowingly make statements that are likely to confuse the public with respect to the proper role of judges and lawyers in the American adversary system.

was disclosed and fully and frankly cooperated with investigations by both the Commission and the Wisconsin Ethics Board.[100]

¶ 91. Nothing in Judge Ziegler's response in her Brief and her counsel's argument before the Judicial Conduct Panel asserts that before the election Judge Ziegler openly admitted that her conduct was a violation of the plain, bright-line prohibition on a judge's

[100] Brief of Annette K. Ziegler to the Judicial Conduct Panel in Support of Wisconsin Judicial Commission Recommendation at 11–13.

The last paragraph in Judge Ziegler's response to question 8 posed by the Judicial Conduct Panel in full is as follows:

Not only did Judge Ziegler do her best to address matters related to the West Bend Savings Bank during the campaign, in advance of any election, she took immediate action with the district's chief judge, other judges, and the clerk of the court in Washington County to implement the "Order Amending Rotation Order" even as the supreme court campaign was ongoing. Moreover, given Judge Ziegler's full and complete disclosures in her statements of economic interests showing the bank as a creditor and as an employer of her husband as a director, there was certainly no attempt whatsoever to hide any of the relationships. These facts provide powerful mitigation to be considered in recommending discipline and they are equally powerful in demonstrating that the handling of routine legal proceedings involving the bank was an inadvertent violation of the Code of Judicial Conduct. Judge Ziegler immediately corrected the error when it was disclosed and fully and frankly cooperated with investigations by both the commission and the Wisconsin Ethics Board (notes omitted).

Judge Ziegler referenced the remarks she made at the Marquette University Law School in the brief she filed with the Judicial Conduct Panel, and her attorney referred to the remarks during oral argument before the Judicial Conduct Panel. We assume the Judge's counsel could feel confident recalling them for the Judicial Conduct Panel because the Judge's remarks can be heard at http://www.jsonline.com/story/index.aspx?id=580291 (last visited May 26, 2008).

sitting in a proceeding when her husband was a director of a party. What is clear is that the Judge never unambiguously admitted before the election that her conduct violated the Code.

¶ 92. Had Judge Ziegler made an unambiguous, public admission before election day that her conduct violated SCR 60.04(4)(e)1., her brief and argument would have vigorously and repeatedly included the admission as a mitigating circumstance. One of Judge Ziegler's strongest arguments for mitigation was the repeated assertion that Judge Ziegler forthrightly admitted her misconduct in closed sessions before the Judicial Commission and the Ethics Board before the election and in public after the election.

¶ 93. The Judicial Conduct Panel asked a question but did not demand that the parties answer the question directly or fully. The Panel did not follow through on its inquiry into the timing of Judge Ziegler's public admissions and acknowledgments of her misconduct.

¶ 94. The Judicial Conduct Panel could have clarified the answers to its question 8 at the hearing by taking testimony, as has been done by panels in prior cases in which the parties filed a stipulation and recommendation for discipline.[101]

¶ 95. The Judicial Conduct Panel's decision not to take testimony was deliberate. At the beginning of its hearing, Presiding Judge Fine stated that the Judicial Conduct Panel had decided not to hold an evidentiary hearing and not to take testimony. It decided instead to

_____

[101] *See, e.g., Crawford,* 245 Wis. 2d 373, ¶ 7; *Tesmer,* 219 Wis. 2d at 713; *In re Judicial Disciplinary Proceedings Against Carver,* 192 Wis. 2d 136, 140, 531 N.W.2d 62 (1995); *Aulik,* 146 Wis. 2d at 64–66.

rely on the assertions of fact in the documents before it, the pleadings, and the stipulation, as well as the assertions of fact made by counsel in the briefs and in argument.[102] When asked, Judge Ziegler's counsel said he did not object to this procedure. Although Judge Fine planned to ask Mr. Alexander whether he objected to proceeding in this manner, Judge Fine did not do so. Mr. Alexander did not ask for an evidentiary hearing.

¶ 96. Nothing in the record directly answered question 8 that the Judicial Conduct Panel posed. We agree with the Judicial Conduct Panel that question 8 raises an important consideration in imposing discipline. But the question is not answered in the record. If the Judicial Conduct Panel found as a fact that Judge Ziegler publicly admitted misconduct before the election, the finding is not supported by the record.

¶ 97. Although the question about the timing of the open and public admission is important, we nevertheless have decided not to remand the matter for an evidentiary hearing and a finding of fact relating to question 8. Judge Ziegler's election was more than one year ago. It is time to conclude this matter for the sake of Judge Ziegler and the Judicial Commission, this court, and the people of the State. Consequently, we will review the Judicial Conduct Panel's report and recommendation despite some concerns about the completeness of the record. The court has enough information upon which to base its decision about the discipline to be imposed, despite the ambiguous state of the record about Judge Ziegler's denial or admission of misconduct before the election.

---

[102] Transcript of the Hearing Before the Judicial Conduct Panel at 6–7.

¶ 98. *Precedent.* We impose discipline indepen-
dently of the recommendation of the Judicial Conduct
Panel and the parties' Stipulation and Joint Recommen-
dation of Discipline, benefiting from the Judicial Con-
duct Panel's and the parties' recommendations.[103]

¶ 99. Each case involves unique circumstances.
"We have not established, nor will we here, a 'bright line'
standard when, for example, reprimand or censure is
warranted as opposed to suspension. Each case is
different, and is considered on the basis of its own
facts."[104] Nevertheless, past judicial misconduct cases
are of some use in setting the discipline appropriate for
the instant case. We turn to prior discipline cases
because discipline imposed in any case should be con-
sistent with that imposed in other cases.

¶ 100. The Judicial Conduct Panel considered two
previous cases as most informative: *In re Judicial
Disciplinary Proceedings Against Dreyfus,* 182 Wis. 2d
121, 513 N.W.2d 604 (1994), in which a circuit court
judge was suspended for 15 days for (1) filing false
certificates attesting that he was up to date in deciding
his cases; (2) lying to his chief judge about whether he
was up to date in deciding his cases; and (3) initially
telling the same lie to a Judicial Commission investiga-
tor; and *In re Judicial Disciplinary Proceedings Against
Crivello,* 211 Wis. 2d 435, 564 N.W.2d 785 (1997), in
which a circuit judge was publicly reprimanded for
battering his wife.

¶ 101. The Judicial Conduct Panel concluded that
Judge Ziegler does not deserve a suspension because

---

[103] *Crawford,* 245 Wis. 2d 373, ¶ 38 (citing *Seraphim,* 97
Wis. 2d at 513).

[104] *Crawford,* 245 Wis. 2d 373, ¶ 40.

her conduct was much less serious than Judge Dreyfus's, and viewed Judge Ziegler's conduct as warranting no more than the same discipline, a public reprimand, as was imposed on Judge Crivello.[105]

¶ 102. We have considered these cases and also consider *In re Disciplinary Proceedings Against Laatsch,* 2007 WI 20, 299 Wis. 2d 144, 727 N.W.2d 488. *Laatsch* presents a fact situation similar to the present case. *Laatsch* was a part-time municipal judge who sat on one case in which his niece, a minor, appeared as a defendant and in another case in which his nephew, also a minor, appeared as a defendant. Laatsch did not recuse himself from either case. The Judicial Commission charged Laatsch with a willful violation of SCR 60.04(4)(e)1., which requires a judge to recuse himself "whenever a person within the third degree of kinship" to the judge "[i]s a party to the proceeding." Laatsch was also charged with another willful violation of the Code,

---

[105] The Judicial Conduct Panel concluded as follows:

*Crivello* and *Dreyfus* are bookends that set the boundaries of appropriate discipline. If a fifteen-day suspension is appropriate for a judge who filed false official certificates directly affecting his judicial business, lied to his chief judge about it, and initially lied to the Commission investigator about it, can anyone adhering to neutral principles unaffected by clamor seriously contend that what Justice Ziegler did here warrants a sanction as harsh or harsher than that imposed in *Dreyfus?* We think not.

Further, although Judge Crivello's battering of his wife did not directly affect his judicial duties, it indirectly affected those judicial duties because persons who are given the authority to judge others accused of violating the criminal law must not, themselves, commit crimes. Again, can anyone adhering to neutral principles unaffected by clamor contend that Justice Ziegler's violation warrants more than the reprimand given to Judge Crivello? We think not.

Judicial Conduct Panel's Findings of Fact, Conclusions of Law and Recommendations at 26.

namely presiding over a matter in which one of Laatsch's clients in private practice was a defendant.

¶ 103. The mitigating circumstances were that Judge Laatsch had never been disciplined; no favor was shown to his niece and nephew; Judge Laatsch mistakenly believed his disqualification could be waived; and Judge Laatsch expressed great regret that his conduct had a negative impact on the appearance of his impartiality and the integrity of the court. These mitigating circumstances are similar to the ones in the present proceeding.

■

¶ 104. In *Laatsch,* as in the present case, the parties stipulated to a public reprimand. Judge Laatsch was defeated in a primary election for municipal judge and as a defeated municipal judge, Laatsch had no continuing relationship with the Wisconsin court system or judiciary. Suspending or revoking Judge Laatsch would be futile discipline; Laatsch could no longer serve as a municipal judge or as a reserve municipal judge. Under these circumstances no discipline except a public reprimand could realistically be imposed.[106] Thus this court, like the Judicial Conduct Panel, decided that a

---

[106] The Judicial Conduct Panel in Judge Laatsch's case commented as follows:

> Judge Laatsch no longer serves as Mid-Moraine Municipal Court judge, having been defeated . . . . [B]ecause we conclude that the sanctions of suspension or removal would serve little purpose because he was defeated in the primary election, we conclude that a reprimand is adequate discipline and it is sufficient to protect the public from any further judicial misconduct of this kind by others.

Brief & Appendix of Wisconsin Judicial Commission in *In re Judicial Disciplinary Proceedings Against Laatsch,* 2004AP2954–J, at 12–13.

public reprimand was the appropriate discipline for Judge Laatsch to protect the public.

¶ 105. The instant case differs from the *Laatsch* case because Judge Ziegler won the election and is serving as a justice in the Wisconsin judicial system. Accordingly, suspension or revocation is a viable sanction in the instant case. Nevertheless, after careful consideration we have come to the conclusion that a public reprimand is the appropriate sanction for Judge Ziegler's violation of SCR 60.04(4)(e)1. Prior judicial misconduct cases in which judges received a sanction more severe than a reprimand all involved some degree of moral culpability that is not present here.

¶ 106. Although Judge Ziegler should have realized that, absent a waiver from the parties, she was required to recuse herself from the 11 cases at issue, and although we conclude that her failure to recuse herself was willful and diminishes public confidence in the legal system, the Judge was cooperative with the Wisconsin Ethics Board and the Judicial Commission and after the election admitted publicly the violations at issue.

¶ 107. A review of the online edition of the Office of Lawyer Regulation's *Wisconsin Attorneys Professional Discipline Compendium,* available at http://compendium.olr.wicourts.gov/app/search, shows that from 2002 to 2007, attorneys who were found to have violated conflict of interest rules, which although different from the rules applicable to judges are nevertheless somewhat analogous, almost always received either a private or public reprimand, if they had no prior disciplinary history. Those attorneys who received a license suspension for conflict of interest violations either had a prior disciplinary history or were also found to have committed additional ethical violations.

¶ 108. Our decision to impose a public reprimand and not a suspension is consistent with our past precedent in both the judicial and attorney discipline lines of cases.

¶ 109. In addition, a suspension would not serve the purpose of fostering public trust and confidence in the judicial system any better than a public reprimand under the circumstances of the present case. Under some circumstances, a suspension would be needed to maintain public trust and confidence. However, in the circumstances of the present case, we conclude that this drastic step is unnecessary.

¶ 110. We have not previously imposed censure in a judicial disciplinary proceeding and have not, to the best of our knowledge, defined the word in this context. The Judicial Commission, the Judicial Conduct Panel, and Judge Ziegler did not discuss censure.

¶ 111. Although a reprimand may be either public or private, we conclude that a private reprimand is not appropriate in the present case. A private reprimand cannot adequately convey to the public the gravity with which this court views judicial misconduct such as Judge Ziegler's willful violation of SCR 60.04(4)(e)1.

¶ 112. Our decision to impose a public reprimand is based on our review of precedent and the application of the factors discussed above to the circumstances of this case. It is not based on any public comment or clamor advocating a particular result.[107]

¶ 113. Some may believe that the sanction imposed today is too severe. Judge Ziegler herself, together with the Judicial Conduct Panel and the Judicial

---

[107] "A judge shall be faithful to the law and maintain professional competence in it. A judge may not be swayed by partisan interests, public clamor or fear of criticism." SCR 60.04(1)(b).

307

Commission, recommended a public reprimand. Others may believe the sanction imposed today is too lenient. The misconduct is, however, both serious and significant. And a sanction of a public reprimand is both serious and significant. Never before in the history of the Wisconsin Supreme Court has a sitting justice received a public disciplinary sanction from the members of the Court.

¶ 114. In sum, Judge Ziegler violated a rule that clearly mandated that she either recuse herself from the 11 cases involving the bank or obtain a waiver of recusal. Judge Ziegler's conduct was a serious failing. While the potential for harm to the court system, to the litigants in the cases she decided, and to the public's perception of the fairness of the judicial system was great, *Tesmer,* 219 Wis. 2d at 733, neither Judge Ziegler nor her family benefited financially from her participation in the cases. None of the litigants has asked to have a case reopened. Judge Ziegler took prompt steps to prevent a recurrence, and after the election the Judge has publicly apologized for her misconduct. The record demonstrates that Judge Ziegler was a hard-working, diligent, and highly regarded circuit court judge. The Judge's conduct at issue here is, however, troubling. Nevertheless, we are confident that Judge Ziegler can and will perform creditable service as a member of this Court.

¶ 115. We determine that on the facts and circumstances before us, Judge Ziegler's judicial misconduct warrants the reprimand recommended by the panel.

¶ 116. IT IS ORDERED that the Honorable Annette K. Ziegler is publicly reprimanded for conduct violating SCR 60.04(4)(e)1.

¶ 117. ANNETTE KINGSLAND ZIEGLER, J., did not participate.

¶ 118. LOUIS B. BUTLER, JR., J. (*dissenting*). I

respectfully dissent, not with the particular choice of discipline made by the court, but with the lack of a sufficient evidentiary foundation for that determination. The easy part of this decision is the recognition of Judge Ziegler's undisputed and stipulated violation of SCR 60.06(4)(e)1. *See* per curiam op., ¶¶ 1–3. The problem is what happens in the remainder of the per curiam opinion, as the court attempts to determine the appropriate discipline in light of relevant mitigating and aggravating "facts," despite the lack of sufficient facts in the record supporting its determination. I respectfully cannot sign on to a decision lacking the type of evidentiary basis that we would consider a foundational requisite in any other case before us.

¶ 119. As the majority observes, when the Panel explained its decision to take no testimony at the November 19, 2007, hearing in this matter, it explained that it would instead "rely on the assertions of fact in the documents before it, the pleadings, the stipulation, as well as the assertions of fact made by counsel in the briefs and in argument." Per curiam op., ¶ 20. However, briefs and arguments do not constitute evidentiary facts of record. *See Merco Distrib. Corp. v. O&R Engines, Inc.,* 71 Wis. 2d 792, 795–96, 239 N.W.2d 97 (1976).

¶ 120. In light of the lack of an evidentiary record in this case,[1] I cannot accept the court's stated reasons for denying remand. I respectfully disagree that at the one-year mark a case has become no longer worthy of ensuring the adequate evidentiary safeguards and factual foundation as required in any other case that comes before us.

¶ 121. The majority begins its analysis by describing the purpose of judicial discipline: to protect our

[1] *See* per curiam op., ¶¶ 21, 87, 96.

309

judiciary and public from misconduct and "to restore and maintain the dignity, honor, and impartiality of the judicial office." Per curiam op., ¶ 35 (citations omitted). I agree. I therefore would remand this matter to the Judicial Conduct Panel for further fact-finding. Accordingly, I respectfully dissent.